PER CURIAM.
This court’s decision in Wasserman v. Florida State Board of Architecture, 361 So.2d 792 (Fla. 1st DCA 1978), held invalid, as an unlawful delegation of legislative authority, Section 467.08(l)(b)5, Florida Statutes (1973). On appeal of this decision the Supreme Court of Florida reversed, Florida State Board of Architecture v. Wasserman, 377 So.2d 653 (Fla.1979), holding that the questioned statutory provision contained adequate legislative standards to guide the Board’s discretion in administering the law so as to determine the qualifications of applicants seeking admission to practice the profession of architecture in Florida. This cause was remanded to this court for consideration of Wasserman’s challenge to the evidentiary basis for the Board’s action in *346 denying him certification as an architect in Florida. We affirm the Board’s decision.
In his appeal to this court, appellant contends that the evidence he presented in the administrative hearing below adequately established his qualifications under the “equivalency” portion of the statute, Section 467.08(l)(b)5, which provides as one of the requirements for admission that the applicant must be either a graduate of an approved school or college of architecture,[1] or have had “training which shall be found by the Board to be fully equivalent to such degree, ...” plus a minimum of one year of diversified training in offices of registered practicing architects.
The evidence of appellant’s accomplishments, while impressive, does not compel a finding of reversible error on the part of the Board. The hearing officer, whose findings and recommended order were adopted by the Board, carefully summarized and evaluated the evidence relating to appellant’s educational qualifications, his work experience, private study and other activities, as follows (recommended order, January 27, 1977):
2.The petitioner received a Bachelor of Science degree from Chicago Technical College, Chicago, Illinois on December 17, 1954. Petitioner’s course of study was architectural engineering. The Chicago Technical College was not, during the time that Petitioner attended it, and is not now on the approved list of schools and colleges of architecture adopted and published by the Board. The course of study pursued by the Petitioner at Chicago Technical College was not the same as a program in architecture. The program was a highly technical engineering program. The design studio which is perhaps the major facet of an architectural program was not present in the architectural engineering program pursued by the Petitioner.
3. Following his graduation the Petitioner worked with other architects in the general practice of architecture. His longest periods of employment were with Cabanban and Wasserman, architects, where he worked for four years and eleven months from 1958 until 1963; and with Ohrnstein and Wasserman, with whom he was employed for four years and four months from 1966 through 1971. In each of these jobs the Petitioner performed the sort of work ordinarily performed by architects. A listing of the different projects in which the Petitioner performed design and supervisory functions is set out as a part of Hearing Officer’s Exhibit 10. A wide variety of commercial buildings, apartment complexes, and private residences are included. Petitioner served as a partner in Cabanban and Wasserman, and in Ohrn-stein and Wasserman. Augustine Caban-ban and Earl Ohrnstein were both registered architects during the course of the partnerships. Cabanban and Ohrnstein each testified that the Petitioner performed the full range of architectural services during the course of the partnerships, and that his work was excellent. Architectural drawings submitted by the Petitioner to the Board demonstrate that the Petitioner did not achieve a high level of design proficiency from his work experience. The best drawings submitted demonstrated a level of competence of approximately a third year architecture student in a five year program. Other drawings demonstrated a lack of design competence, and were inadequate.
4. During 1972, the Petitioner passed the standard examination offered by the *347 National Council of Architectural Registration Boards. Petitioner holds a current certificate issued by the National Council, and is registered to practice architecture in the State of Illinois.
5. Schools or colleges of architecture approved by the Board have many common features, and the curricula offered at the schools are fairly consistent. Generally the programs and the curricula have remained consistent since approximately 1955 with minor variations, or changes of a technical sort. There is no real distinction between the sort of program which would have been approved in 1955, and the sort of program which would be approved today. Typically an approved program which operated on a quarter hour academic basis would require approximately 240 quarter hours for graduation. Approximately 75 quarter hours would be in architectural design culminating in a thesis. Approximately 60 quarter hours would be in general education subject matter, with between 30 to 35 hours in social science and humanities. The social science background is important because an architect must bring together all the factors which relate to the building environment, including social factors.
6. The educational program followed by the Petitioner lacked the necessary design courses and social science courses which would be required in an approved architectural program. An architectural engineer is an engineer involved with buildings. The design courses in an architectural engineering program are set up to enable the engineer to work with an architect. Through on-the-job training the Petitioner received considerable design experience; however, drawings which he submitted to the Board did not evidence that he had achieved the level of design competence which would be required of a graduate of an approved architectural program. The fact that the Petitioner passed the National Council’s test does not in itself establish that Petitioner reached the necessary level of competence. Petitioner did not offer evidence from which it could be concluded that his studies and experience would substitute for the social science background required of a graduate of an approved program. The Petitioner did not establish that he took social science courses, or engaged in individual study in the social sciences, or engaged in any other activities which would substitute for such an academic background.
The Board adopted the hearing officer’s conclusions that appellant failed to establish by satisfactory evidence that he had acquired a level of competency equal to that of an architect with a degree from an approved school or college of architecture, and that appellant’s deficient educational background was not supplemented by private study, on the job training, or other practical experience sufficient to meet the equivalency requirement of the statute.[2]
Our examination of the record convinces us that the findings and conclusions of the hearing officer, and the Board, are supported by competent substantial evidence. This case is distinguishable from Burford v. *348 Florida State Board of Architecture, 342 So.2d 853 (Fla. 1st DCA 1977), in which there was an absence of significant negative findings, factual errors in the findings of the Board, and differences in the qualifications of Burford, who was a registered architect in seven states at the time of his application for registration in Florida. The Board’s decision must therefore be affirmed.
AFFIRMED.
McCORD and LARRY G. SMITH, JJ., and WOODROW M. MELVIN, Associate Judge (Retired), concur.

. Appellant’s contention that the Board’s failure to follow the technical requirements of the statute by adopting a “rule” setting forth the approved schools or colleges of architecture recognized by the Board is without merit. As pointed out in the Supreme Court’s opinion, Florida State Board of Architecture v. Wasserman, 377 So.2d 653 at 657, the statute itself “establishes a standard by which to evaluate applicants.” The Board’s conclusion that appellant was not a graduate of “a school or college of architecture” is amply supported by the evidence, despite the fact that the Board’s “list” of such “approved” colleges or schools was merely incorporated in its official minutes, rather than being formally promulgated as a rule.

. Florida State Board of Architecture v. Wasserman, supra, opinion at 654, alludes to the Circuit Court’s declaratory judgment holding that in order to meet the “training” equivalency of the statute, Section 467.08(1 )(b)5.
... an applicant must have acquired by any combination of private study, classroom education, on-the-job training and/or other practical experience a degree of proficiency found by the Board after study of each applicant’s qualifications, to be fully equal to the degree of competency as an architect possessed by a graduate of an accredited school.
Further in the Supreme Court’s opinion, at 657, the court stated:
The requirement of a degree from a school or college of architecture establishes a standard by which to evaluate applicants. The training equivalency provision of the statute is governed by the same standard. That is, the legislature intended that the Board evaluate the applicant’s training by comparing it to the curriculum required for graduation from a school or college of architecture.
We interpret this language as tacit approval of the Circuit Court’s interpretation of the statute, which we in turn utilize as a guideline for our review of the Board’s decision.