ERVIN, Judge.
The appellant, Alterman Transport Lines, Inc. (Alterman), seeks review of the final order issued by the Florida Department of Transportation (department), rejecting the hearing officer’s recommended order and denying Alterman’s petition for approval of a proposed access route for its tandem trailer trucks. We affirm as to all four issues raised on appeal,[1] addressing only the fourth issue, whether Alterman is entitled to approval of its petition by default, in that the department failed to render an order approving or denying the route within the statutorily mandated time established in Section 120.60, Florida Statutes.
Section 316.515(3)(c), Florida Statutes, provides for the operation of tandem trailer trucks on a specific highway network in Florida. Under the statute, the tandem trailer trucks may also travel on approved access routes that are within specified distances from the network, so as to afford access to terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading. Subsection (3)(c)2.b. also provides that any operator of a terminal facility located outside the prescribed distance limitations of access routes may seek access by submitting a “petition for access” to the department, which may, “after consideration of safety, roadway facility capability, and public convenience”, approve or disapprove the petition. Section 316.-515(3)(c)2.b.
Pursuant to the above subsection, Alter-man submitted a petition for terminal access of its tandem trailer trucks, requesting approval of an access route over an extensive portion of U.S. Highway 1, approximately 123 miles in length, from the company’s headquarters in Opa Locka to its terminal in the lower portion of the Florida Keys at Rockland Key. The department summarily denied the petition, and Alterman submitted another, asking the department to reconsider. The department again denied the request, “primarily because most of the requested route, which is over 100 miles long, is only two lanes.... Our basic policy is to exclude two-lane routes ... due to limitations related to passing requirements, stopping sight distances, much higher accident rates, and other safety related factors.” Alterman then requested a formal hearing pursuant to Section 120.57, Florida Statutes, and the matter was referred to a DOAH hearing officer.
The hearing officer found that Alterman had established by clear and convincing evidence that its proposed tandem truck *1007 operations could safely operate on U.S. Highway 1, and recommended approval of the petition, with restrictions as to the hours of operation, number of vehicles, and other safety requirements. In its final order, however, the department rejected several findings of fact and conclusions of law made by the hearing officer, concluding:
Given the geometric characteristics and roadway facility capability of U.S. 1, the safety factors mentioned, and considerations of the general convenience to the public, the Department does not believe that sufficient reasonable assurances have been given by Petitioner to show that it would be in the public’s interest to allow terminal access for tandem trailer combinations along U.S. 1 through the Keys.
Alterman argues that its “petition for access” is an application for a “license”, within the meaning of Sections 120.52(8) and 120.60, Florida Statutes, and, as the final order was rendered more than 45 days after the recommended order was submitted to the department, its petition should be “deemed approved”.[2] If, on the other hand, the department’s approval of the proposed route cannot be considered a license, Alterman’s application would be governed by the provisions of Section 120.-59, Florida Statutes, providing that an agency’s final order shall be rendered within 90 days after the recommended order is submitted. The department’s final order was in fact rendered within the time limitations of section 120.59, and it is this statute which the department argues controls the issue at bar.[3] We agree with the department that a “petition for access”, under section 316.515(3)(c)2.b., is not a “license”, as defined by section 120.52(8), and that the final order was therefore timely rendered in accordance with section 120.59.
Section 120.52(8) defines a license as a “franchise, permit, certification, registration, charter, or similar form of authorization required by law.” This definition encompasses “all administrative acts, whether mandatory or discretionary, related to privileges conferred by the state.” Reporter’s Comments on Proposed Administrative Procedure Act for the State of Florida, reprinted in 3 A. England and L. Levinson, Florida Administrative Practice Manual at 11. Although it is not specifically stated in the statutory definition, it is clear from the case law interpreting section 120.60 that the “privilege” conferred by the state necessarily entails a licensing procedure which is personal in nature. See, e.g., National Freight, Inc. v. State, Department of Transportation, 483 So.2d 742 (Fla. 1st DCA 1986); Gonzalez v. Department of Health and Rehabilitative Services, 418 So.2d 1128 (Fla. 1st DCA 1982); Wasserman v. Florida State Board of Architecture, 392 So.2d 345 (Fla. 1st DCA 1981). Licensing includes the issuance of professional and occupational licenses to an individual or a corporation, as well as the grant of licenses for such privileges as the obtainment of a bank charter, the sale of liquor, or the issuance of a certificate of need for the operation of a medical facility. See generally Florida Administrative Practice Chapter 6 (2d ed. 1981).
The procedure for a “petition for access” under 316.515(3)(c)2.b. however, does not, in our judgment, confer a “privilege” or “license” to any individual or entity, within the meaning of sections 120.52(8) and 120.-60, to perform an act which, without it, is barred to others. Instead, the statute provides for the approval or denial of a particular roadway, which, if approved, is added to an existing network of accepted roads upon which tandem trailer trucks may op *1008 erate. Section 316.515(3)(c)2.a. states that tandem trailer trucks may operate along approved access roads that are located within one to three miles of an interchange of a tandem trailer truck route. If an operator of a terminal facility located outside the designated distance limits desires to obtain approval of a longer route, he must submit a petition for access to the department. Significantly, Rule 14-54.-0017, Florida Administrative Code, setting forth the rules governing the petition, is entitled, “Selection and Approval of Off-System Routes to Terminal Facilities” (e.s.). Obviously, it is the approval of the route which is sought, not the permitting of specific trucking lines.
Alterman argues that although the petition involves approval of a specific route, the privilege for same remains personal to it, as only truck drivers working for Alter-man will utilize the route to reach their terminal. There are, however, no provisions in the statute precluding drivers employed by other trucking lines from utilizing the route, regardless of Alterman’s claim that this would be unlikely. Indeed, once an access route is approved, the route remains in existence unless it is specifically suspended or revoked by the department.[4] In the event the route is disapproved, approved with restrictions, or a suspension, revocation or fine is imposed, the petitioner or any other affected party may request a hearing pursuant to the procedure provided by Section 120.57. See Rule 14-54.0020, Fla.Admin.Code.
Thus, although only one petitioner, Al-terman, has as yet sought approval of the route, the statute clearly contemplates the use of the route by other parties. The statute’s terms could allow Alterman, if it had none of its own trucks available, to hire drivers from other trucking lines, or arrange an agreement permitting other truckers to use Alterman’s terminal. Should Alterman’s business cease to operate, the actual access route would not also terminate, but would remain an approved thoroughfare. Under such a scenario, a subsequent trucking line could purchase Alterman’s terminal facility and utilize the route, without the necessity of acquiring any type of “license”.
The department is further required to issue an “approved tandem trailer access . map”, which map “shall be made available by the facility operator, at his expense, to every driver of a tandem trailer truck using such facility.” Section 316.-515(3)(c)2.b. Alterman is not precluded, then, from providing this map to any truck driver. Additionally, the access map may also be used “by enforcement officials as the basis for enforcement action relating to the use of unapproved access routes.” Id. Accordingly, it is the route that is the focus of regulation and enforcement, not the individual or entity using the route.
Prior to the Regulatory Reform Act of 1976[5] (Reform Act), the authority to regulate Florida’s motor carriers was vested in the Public Service Commission (PSC), which, pursuant to Chapter 323, Florida Statutes, issued certificates of public necessity and convenience as a prerequisite to the operation of commercial carriers. Under the terms of the Reform Act, the legislature’s failure to provide “phase-out” deregulation resulted in the sunsetting of the entire state motor carrier regulatory scheme as of July 1,1980. The total deregulation of the trucking industry necessarily had the effect of obfuscating the process of obtaining and maintaining governmental licenses and permits. See S. Salley, Federal Tax Implications of Administrative Reform: Dealing with the Deregulation Loss, 32 U.Fla.L.Rev. 910 (1980). Thus, the argument that approval of an access route requires the issuance of a “license”, *1009 within the meaning of section 120.60, runs contrary to the legislative intent manifested by the Reform Act.
In conjunction with the repeal of PSC’s authority under Chapter 323, the legislature provided for the transfer of traffic control and safety regulatory power to the department. Section 316.006, Florida Statutes, confers jurisdiction on the department to control traffic over all state roads throughout the state and to “place and maintain such traffic control devices ... as it shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic.” The legislature, throughout Chapter 316, provides several alternative methods by which traffic on state roads may be controlled by the department. Unlike Section 316.550, Florida Statutes, and Chapter 14-26, Florida Administrative Code, providing for the specific permitting of vehicles having nonconforming sizes, widths, or excess loads, section 316.515(3)(c) implements, in accordance with federal regulations,[6] the traffic control of tandem trailer trucks by the use of a network of specifically approved roadways over which these trucks may travel. The implementation of a non-permitting procedure for the control of the tandem trailer truck operation is wholly within the prerogative of the legislature and is consistent with the deregulatory scheme intended by the Reform Act.
Appellant also relies upon Rule 14-26.-0042(3), Florida Administrative Code, which states that “permits for tandem trailer trucks are issued by the Department in accordance with Rule Chapter 14-54, F.A. C.” (e.s.) Appellant contends that the above language supports its position that consideration of an application for a proposed access route to be used by tandem trailer trucks can only be achieved by licensing. The above referenced rule, however, does not apply to tandem trailer access routes, but rather pertains to “Regulations Governing The Safety of Tandem Trailer Truck Combinations”, such as size, weight, brake, and emergency equipment regulation. We have found nothing in the Department’s rules, aside from the cryptic label “permits,” supportive of appellant’s construction of the rule as requiring licensing for tandem trailer access routes.
Because neither section 316.513(3)(c) nor the administrative rules implementing the statute disclose that a petition for terminal access requires the issuance of a license or privilege, we therefore conclude that the time constraints of section 120.60 do not apply to the department’s issuance of a final order relating to a petition seeking approval of a proposed access route for tandem trailer trucks. And, as the final order was rendered within the time allowed by section 120.59, it is
AFFIRMED.
SMITH, C.J. and BOOTH, J., concur.

. Because we find competent, substantial evidence to support the remaining three issues on appeal, we do not find it necessary to discuss those issues.

. Section 120.60 provides that every application for licensure shall be approved or denied within 90 days after receipt of the original application. This period is tolled by the initiation of a proceeding under 120.57, and resumes 10 days after the recommended order is submitted to the agency and the parties. The statute further provides that any application which is not approved or denied "within the 90-day or shorter time period, within 15 days after conclusion of a public hearing held on the application, or within 45 days after the recommended order is submitted to the agency and the parties, whichever is latest, shall be deemed approved."

. The parties were requested, by order of this court, to prepare supplemental briefs specifically addressing this issue.

. Under Rule 14-54.0017(3), Fla.Admin.Code, the department may at any time review and suspend or revoke its grant of tandem trailer access for any of the following reasons:
(a)The Department has the reason to believe that the petitioner made a material misrepresentation in its petition ...
(b) The Department has reason to believe that the terminal no longer meets the requirements of Section 316.515, F.S.; or
(c) A change has been made to the Network that will restrict or deny access to the facility or the currently approved route.

. Section 11.61, Florida Statutes.

. 23 C.F.R. § 658.3 states: "The Federal Highway Administration’s (FHWA) policy is to provide a safe and efficient National Network of highways that can safely and efficiently accommodate the large vehicles authorized by the STAA [Surface Transportation Assistance Act of 1982].”