338 So.2d 832 (1976)
J. Ed STRAUGHN, Executive Director, Department of Revenue, State of Florida, Appellant,
v.
Louis F. O'RIORDAN, Appellee.
No. 47452.
Supreme Court of Florida.
October 14, 1976.
*833 Robert L. Shevin, Atty. Gen., and J. Kendrick Tucker, Asst. Atty. Gen., for appellant.
Louis F. O'Riordan, in pro per.
ENGLAND, Justice.
By direct appeal pursuant to Article V, § 3(b)(1) of the Florida Constitution, we are asked to review a declaratory judgment of the Bay County Circuit Court holding Section 212.14(4), Florida Statutes (1973), invalid as an unconstitutional delegation of legislative authority. Appellee has not appeared in this proceeding and appellant has waived oral argument.
In 1973 Louis O'Riordan sought to establish a business in Panama City for which he was required to register with the Department of Revenue for the collection of state sales taxes.[1] Acting under Section 212.14(4), Florida Statutes (1973), the Department refused to register O'Riordan unless he agreed to post a cash bond of $200 or a surety bond of $1,000. O'Riordan refused and continued to operate his new business. After the initiation of legal proceedings not relevant here, O'Riordan sought declaratory relief in the circuit court, alleging that the bond statute constituted an unconstitutional delegation of legislative power in violation of Article II, Section 3 of the Florida Constitution. The circuit court in Bay County agreed and specifically held the statute unconstitutional. This appeal followed.
In relevant part Section 212.14(4) directs the Department to require a bond from sales tax registrants in "all cases where it is necessary to insure compliance with the provisions of this chapter... ." A hearing was conducted at which the Department developed evidence as to the guidelines and procedures it uses for determining when to require bonds and in what amounts.[2] The record shows, for example, that the chief of the sales tax bureau considers the financial stability of an applicant to be the primary guide, but that the area supervisor covering the Bay County area "plays it by ear" with his primary emphasis being on length of residence and good character. O'Riordan, in this case, was required to post a bond because he was a new resident without property holdings whose business did not have a large inventory, and because Bay County is in an area of seasonal *834 business. The record also shows that the Department's application form does not request any information on which the Department relies for bond-setting purposes, having no questions as to financial status, value of property holdings, length of residence, the existence of outstanding money judgments, credit references, or other factors. Based on this record the trial judge concluded that the legislative grant of authority lacked adequate standards and guidelines by which to govern the Department's unbridled discretion, and was invalid.
In our view, Section 212.14(4) is a constitutional delegation of power to protect the sales tax revenues of the state. It is not the Legislature's delegation which is improper, but rather the Department's exercise of that delegated authority. This delegation of authority can be readily classified with others we have upheld which require a factual determination of the fitness of each applicant for a license or similar permit. See, for example, Permenter v. Younan, 159 Fla. 226, 31 So.2d 387 (1947). Cf. Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789, 793 (1919). The problem of arbitrariness which concerned the circuit court is a consequence of the Department's failure to adopt rules which set out the standards to be applied to each sales tax applicant.
Over the years the Department has established informally guidelines by which its employees could determine whether a bond was "necessary". To date these guidelines have not been publicly promulgated, although the Department has at all relevant times been subject to the rulemaking provisions of the state's administrative procedure act.[3] Under the act in force at the time O'Riordan sought to register with the Department, a "rule" was defined to mean any
"standard, statement of policy, requirement, procedure, or interpretation of general application .. . adopted by an agency to implement, interpret or make specific the law enforced or administered by it... ." Section 120.021(2), Fla. Stat. (1973).
The standards attempted to be applied to O'Riordan were "rules" under the act, and as such were not enforceable against him in the absence of publication in the manner prescribed by law. See Section 120.031(1), Florida Statutes (1973).
The necessity for publication is emphasized by the facts in this case. Here the policies were so informal as to be diverse among Department personnel. Based on the record testimony in this case, it is apparent that the area supervisor for Bay County was attempting to apply the statute to O'Riordan in an arbitrary and totally discretionary manner. For that reason his attempted application of the statute was invalid. We hold, however, that under guidelines properly adopted and uniformly applied, the statute is a valid enactment for a purpose within the Legislature's power.
We reverse the circuit court's ruling that Section 212.14(4) is unconstitutional, but we affirm the order below in all other respects.
OVERTON, C.J., and BOYD and SUNDBERG, JJ., concur.
ADKINS, J., dissents with an opinion, with which ROBERTS and HATCHETT, JJ., concur.
ADKINS, Justice (dissenting).
I dissent.
Circuit Judge Larry G. Smith, of the Fourteenth Judicial Circuit, entered a final judgment which contained the following:

*835 "The Plaintiff applied to the local office of the Florida Department of Revenue for registration as a dealer for the sale of tangible personal property. Registration is required by Chapter 212, Florida Statutes. Section 212.14(4), Florida Statutes, provides in part as follows:
"`In all cases where it is necessary to insure compliance with the provisions of this chapter, the Department shall require a cash deposit, bond or other security as a condition to a person obtaining or retaining a dealer's certificate of registration under this chapter. Such bond shall be in the form and such amount as the Department deems appropriate under the particular circumstances... .'
"Chapter 212, known as the Florida Revenue Act of 1949', among other things imposes a sales tax, to be collected by the dealer from the customer, the dealer in turn being then required to remit the taxes collected to the Department of Revenue.
"Information is obtained from a potential registrant on a form called `Application for Certificate of Registration'. When Plaintiff applied, the manager of the local office obtained from him the information required to fill in the application. Although the application is customarily signed by the applicant, it was not in this case. However, the Defendant Department admits that no request was ever made for Plaintiff to sign the application. Upon completion of the application form, Plaintiff was informed by the office manager that he would be required to post bond in the amount of $200.00 cash, or a surety bond in the amount of $1000.00. The reasons given Plaintiff for the bond requirement were that he was a `new arrival' and that he had `no property in the state'. The Plaintiff, being aggrieved, expressed his dissatisfaction and was advised to meet with the Area Supervisor the next day. Plaintiff met with the Supervisor, who took Plaintiff's $1.00 registration fee and issued a receipt for the same. He then advised Plaintiff that the bond requirements would be as indicated by the office manager.
"The Plaintiff and the Department agree generally upon the reasons given for the bond requirement in Plaintiff's case. Plaintiff testified that the reasons were that he was a new arrival in the area, had no property holdings in the State, and that the Department had no way of knowing if he would pay the tax money to the State if he collected it. The Supervisor testified that he did not know of Plaintiff prior to that interview, that the Plaintiff was obviously new in town, had no large inventory, was located in an area of seasonal business, and that he had no property holdings in Florida. He further stated that his interview with Plaintiff was not satisfactory, indicating that Plaintiff's `replies were not favorable', and that `every answer was a battle'. The Supervisor further testified that he more or less `plays it by ear' in determining who has to put up bond and who does not, indicating that people who have `been here a long time' and `have good character' would likely not be required to post bond. No point would be served by further detailing the conversations between Plaintiff and the Supervisor. The fact is that the standard application form is totally inadequate to elicit the kind of information the Supervisor states must be relied upon in order to determine whether bond should be required, and if so, the amount. For example, the form makes no inquiry regarding the applicant's financial status, or the value of any property located in the County or in the State. There is no question as to the applicant's length of residence in Florida, nor in the local area. No question is asked regarding the existence of money judgments against the applicant, nor his previous employment or experience. There is no question regarding credit references, nor does the Department seek credit information regarding an applicant prior to determining whether to require a bond or not.
"The Area Supervisor admitted that the so-called `criteria' used by the Department *836 in determining bond requirements are not generally known to the public. The Chief of the Sales Tax Bureau for the Department of Revenue in his deposition stated that it is `the financial stability' of the applicant that determines whether there should be a bond. That the bond requirements have not been legally tested previously is evidence only of the conscientious efforts of the Supervisor in attempting fairly to administer the law, rather than evidence of its validity. All the evidence in this case, however, makes it clear to the Court that despite some rather clear and definite criteria which the Department says it uses in determining the bond requirements, the decision is left up to the personal inclination or whim of the Area Supervisor, without the requirement of anything but a token inquiry into the `financial stability' of the applicant, and without standards, guidelines, or procedures which would insure uniformity in the administration of the bond requirement provisions of the law.
"The Court has been furnished with helpful and well prepared briefs, both by the Department of Revenue and by Amicus Curiae who was invited by the Court to participate in the case. The Plaintiff's attack upon the statute is based upon an unlawful delegation of legislative power. He contends that the statute contains no criteria, standards, or guidelines for determination of the bond requirements, leaving the decision simply within the unbridled discretion of the administrators. As against these contentions, the Department of Revenue argues that the statute itself constitutes an adequate guideline; that it sets forth a general policy sufficient to form the basis for administrative discretion; that it would be impossible to lay down a specific set of standards or guidelines for the exercise of this discretion; and finally, that the so-called `personal fitness' exception to the prohibition against delegation of legislative authority applies in this case.
* * * * * *
"Turning to the merits of the case, it is clear that the State could, if it desired, require a bond of every dealer. The statute in question does not require a bond of every applicant, and Plaintiff's contentions that the statute does not contain adequate standards, guidelines or criteria has merit.
"The Department of Revenue argues, paradoxically, that the Department is in fact bound by certain criteria or guidelines, to satisfy the argument that the statute is vague, ambiguous and indefinite; but at the same time the Department also argues that it would be impossible for the Legislature to spell out adequate standards, guidelines, or criteria. The Department cannot have it both ways. It is true that certain criteria have been developed by the Department, and these have been communicated to the Area Supervisors by telephone, memorandums, and by seminar discussions. These criteria have never been promulgated in the form of rules or regulations of the Department. The Department itself, both in its memorandum of law and in the testimony, suggests adequate reasonable criteria for determining both the necessity for and the amount of the bound [sic]. These include the existence of outstanding money judgments, the past history of payment or non-payment of sales taxes, issuance of worthless checks, detailed information as to the nature, location, history, and type of business, and details as to ownership or equity of the business by the applicant. As to the amount of the bond, the Department itself has developed a `rule of thumb' by which it considers a bond adequate if it is in the amount of estimated tax collections over a three-month period. Parenthetically, the record in this case is totally devoid of any evidence that any inquiry whatever was made of the Plaintiff regarding his estimated tax collections over a three-month or any other period.
"Based upon the foregoing it can hardly be argued that it would be impossible for the Legislature to set forth adequate *837 standards or guidelines to be used by the administrators of the law. The Department appears to argue, as if saying makes it so, that the Legislature has in fact set forth standards or guidelines, when it is quite obvious that the Legislature has not done so.
"It is suggested by the Department that the bond requirement of the sales tax statute is not unique and that many other instances of bond requirements appear in the Florida Statutes. For example, bond requirements exist for distributors of motor fuels, cigarette dealers, manufacturers, distributors and exporters of alcoholic beverages, and so on. Examination of the bond statutes cited by the Department shows that not only is a bond required of all applicants, with some provisions made for reduction of the amount based upon the amount of sales tax collected, but there also appears to be independent basis under the `police power' to require a bond of those particular applicants, whereas there is no semblance of a `police power' motive in the act in question. The main object of the Revenue Act of 1949 is to raise revenue. See 29 Fla.Jur., Sales and Use Taxes, Section 2.
"The Department's argument that the `personal fitness' exception applies is without merit. Under the general rule, the legislative power cannot be completely delegated as to policy and standards. Under the so-called `personal fitness' exception, a general delegation of authority is upheld because of the difficulty or impossibility of laying down specific guidelines. The evidence in this case shows that the bond requirements in question do not fall within the `personal fitness' exception. The ultimate issue, as the Department admits, is simply a matter of whether the State needs to be protected against the possibility that the dealer will not remit the sales taxes collected. The issue is a financial one, not one involving character or fitness. The bond is required, says the Department, where it appears that there would not exist adequate property or means to satisfy the State's judgment against the dealer if he failed to remit taxes collected. If, as the Department argues, the personal fitness or character of the applicant is in question, it has been in issue by the Department itself, rather than the Legislature, for the act in question contains nothing whatever that would justify a determination of bond requirements based upon the applicant's character.
"Article II, Section 3, divides the powers of state government into Legislative, Executive and Judicial branches. The legislative power cannot be completely delegated as to policies and standards. Intelligible principles or standards must be established as a guide to the administrative official in performing his duties. When a statute contains no standard or no sufficient standard for its administration, and no intelligible principle is laid down for the guidance of an administrative official in the performance of his duties, an unlawful delegation of legislative power results unless the situation is within one of the exceptions to the general rule requiring declaration of such standards. See 1 Fla.Jur., Administrative Law, Section 36.
"The Court is bound if at all possible to uphold the constitutional validity of any legislative enactment properly before it. This Court has carefully and conscientiously considered the enactment in the light of its announced purposes, the circumstances and conditions under which it was intended to operate, and the evidence in this particular case as to the manner in which it has been applied. The conclusion is inescapable that the particular portion of the statute, Section 212.14(4) unlawfully delegates legislative authority to the Department of Revenue to say by whom and under what circumstances must a bond be posted, without guidelines or criteria to restrict them in the exercise of their discretion."
The trial judge then held that the statute was an unlawful delegation of legislative authority and in violation of Article II, § 3, Florida Constitution.
*838 I adopt this well-reasoned final judgment of Judge Larry G. Smith as my dissent.
ROBERTS and HATCHETT, JJ., concur.
NOTES
[1] Section 212.18(3), Fla. Stat. (1973).
[2] The trial court's order recites: "It is true that certain criteria have been developed by the Department, and these have been communicated to the Area Supervisors by telephone, memorandums, and by seminar discussions. These criteria have never been promulgated in the form of rules or regulations of the Department. The Department itself, both in its memorandum of law and in the testimony, suggests adequate reasonable criteria for determining both the necessity for and the amount of the bond. These include the existence of outstanding money judgments, the past history of payment or non-payment of sales taxes, issuance of worthless checks, detailed information as to the nature, location, history, and type of business, and details as to ownership or equity of the business by the applicant. As to the amount of the bond, the Department itself has developed a `rule of thumb' by which it considers a bond adequate if it is in the amount of estimated tax collections over a three-month period."
[3] Chapter 120, Part I, Fla. Stat. (1973); Section 120.52(1)(b), Fla. Stat. (1975). The Department had been exempt from the act's adjudication provisions. Section 120.21(1), Fla. Stat. (1973). With the adoption of a new act on January 1, 1975, however, the Department is no longer exempt in any respect unless it applies for and obtains exemption under Section 120.63, Fla. Stat. (1975). As pertains to this proceeding, the new act has as one of its principal goals the abolition of "unwritten rules" by which agency employees can act with unrestrained discretion to adopt, change and enforce governmental policy. The term "rule" was broadly defined in the new act to reach precisely the form of invisible policy-making which the Department has employed in the course of enforcing this bonding requirement. Section 120.52(14), Fla. Stat. (1975).