QUESTIONS:
1. Do the Governor and Cabinet sitting as the head of the Department of Natural Resources retain the authority to approve or deny the establishment of a regional water supply authority?
2. If such authority was transferred to the Department of Environmental Regulation along with other functions under Ch. 373, F. S., does that authority reside in the secretary or the Environmental Regulation Commission?
SUMMARY:
The authority to approve or deny agreements establishing regional water supply authorities pursuant to s. 373.1962, F. S., has been transferred from the Governor and Cabinet, sitting as head of the Department of Natural Resources, to the Department of Environmental Regulation pursuant to Ch. 75-22, Laws of Florida. The Secretary of the Department of Environmental Regulation is the authority to take final action on the approval or denial of agreements establishing regional water supply authorities pursuant to s. 373.1962, F. S., rather than the Environmental Regulation Commission. Appeals from such determinations are to the Environmental Regulation Commission, pursuant to Ch. 75-22, Laws of Florida.
Your questions are answered as discussed below.
In 1974 the Legislature created the mechanism for establishment and approval by the Governor and Cabinet of regional water supply authorities. Section 7 of Ch. 74-114, Laws of Florida, provides in pertinent part as follows:
 (1) By agreement between local governmental units created or existing pursuant to the provisions of Article VIII of the Constitution of the State of Florida, pursuant to the Florida interlocal cooperation act, section 163.01, Florida Statutes, and upon the approval of the governor and cabinet sitting as head of the department of natural resources to insure that such agreement will be in the public interest and complies with the intent and purposes of this act, regional water supply authorities may be created for the purpose of developing, storing and supplying water for county or municipal purposes in such a manner as will give priority to reducing adverse environmental effects of excessive or improper withdrawals of water from concentrated areas. In approving said agreement the governor and cabinet sitting as head of the department of natural resources shall consider, but not be limited to, the following: (Emphasis supplied.)
Thus, as created by Ch. 74-114, supra, the Governor and Cabinet sitting as the head of the Department of Natural Resources had the authority to approve or deny the agreement establishing regional water supply authorities. By specifically mentioning the Governor and Cabinet as the head of the Department of Natural Resources to carry out this function, the Legislature apparently intended such duty to be actually exercised by the Governor and Cabinet and not just by the staff of the Department of Natural Resources, which department, pursuant to s. 373.026, F. S. 1973, was responsible for the administration of Ch. 373, F. S., and had general authority over the water management districts. Cf. s. 20.05(1)(b), F. S. (1974 Supp.).
However, in 1975 the Legislature reorganized the environmental agencies. Section 11 of Ch. 75-22, Laws of Florida, provides in pertinent part as follows:
 All powers, duties and functions of the Department of Natural Resources relating to water management as set forth in chapter 373, Florida Statutes, and chapter 74-114, Laws of Florida, are transferred by a type four transfer, as defined in s. 20.06(4), Florida Statutes, to the department [Department of Environmental Regulation] . . . and provided further that, notwithstanding the provisions of s. 373.026(7), Florida Statutes, the governor and cabinet, sitting as the Land and Water Adjudicatory Commission, shall have the exclusive power by a vote of four or the members, to review, and may rescind or modify any rule or order of a water management district . . . to insure compliance with the provisions and purposes of chapter 373, Florida Statutes. (Emphasis supplied.)
Thus, by type four transfer all functions of the Department of Natural Resources relating to water management contained in Ch. 373, supra, and Ch. 74-114, supra, were transferred to the Department of Environmental Regulation. A type four transfer is defined in s. 20.06(4), F. S., as follows:
 A type four transfer is the merging of an identifiable program, activity, or function of an existing agency into a department. Any program or activity transferred by a type four transfer shall have all its statutory powers, duties, records, personnel, property, and unexpended balances of appropriations, allocations, or other funds transferred to the department to which it is transferred. . . . (Emphasis supplied.)
The Department of Natural Resources is created pursuant to s. 20.25, F. S., and pursuant to s. 20.25(1) the Governor and Cabinet are the head of that department. While sitting as the head of the Department of Natural Resources the Governor and Cabinet are part and parcel of that department and exercise their authority as, for, and on behalf of, that department. I, therefore, conclude that Ch. 75-22, supra, transferred to the Department of Environmental Regulation the approval of agreements establishing regional water supply authorities, since it transferred all
functions of the Department of Natural Resources under Ch. 74-114,supra, to the Department of Environmental Regulation, including all the functions of the head of the Department of Natural Resources, the Governor and Cabinet.
While it might be argued that the Governor and Cabinet are best suited to determine whether the public interest will be served by creation of a regional water supply authority, nevertheless, such determination can certainly be made under the Constitution by other agencies. See s. 6, Art. IV, State Const. Additionally, since the Department of Environmental Regulation is now vested with the responsibility for the administration of Ch. 373, supra, and has general supervisory authority over all water management districts pursuant to s. 373.026, it likewise is certainly in a position to determine whether a proposed regional water supply authority created by agreement between local governmental units `complies with the intent and purposes' of Ch. 373, as required by s. 373.1962. Your first question is therefore answered in the negative.
Your second question asks that if such authority to approve the establishment of regional water supply authorities is vested in the Department of Environmental Regulation, does that authority reside in the Secretary of the Department of Environmental Regulation or in the Environmental Regulation Commission. With respect to the Secretary of the Department of Environmental Regulation, s. 20.261(1), F. S., provides that the head of the Department of Environmental Regulation is the secretary who is appointed by the Governor subject to confirmation by the Senate. Section 20.05(1)(a), F. S., provides that each head of a department shall plan, direct, coordinate, and execute the powers, duties, and functions vested in that department or vested in a division, bureau, or section of that department.
With respect to the Environmental Regulation Commission, s. 6 of Ch. 75-22, supra, provides the duties of the commission as follows:
 The commission shall exercise the exclusive standard-setting authority of the department, except as provided in s. 6(1)(b) and s. 11 of this act. The commission shall also act as an adjudicatory body for final actions taken by the department, except for those appeals and decisions authorized in s. 5 of this act. (Emphasis supplied.)
In order to determine precisely how the approval of agreements establishing regional water supply authorities is to be accomplished, it is necessary to first determine whether such approval constitutes an order or a rule within the meaning of the Administrative Procedure Act. With a few exceptions, most all agency actions are either a rule or an order. See City of Titusville v. Florida Pub. Emp. Rel. Comm'n, 330 So.2d 733 (1 D.C.A. Fla., 1976), and State of Florida ex rel. Department of General Services, et al. v. Ben C. Willis, etc., et al. Case No. DD. 104 (1 D.C.A., Fla., 1977). Section 120.52, F. S. (1976 Supp.), defines rule and order as follows:
 (9) `Order' means a final agency decision which does not have the effect of a rule and which is not excepted from the definition of a rule, whether affirmative, negative, injunctive, or declaratory in form. An agency decision shall be final when reduced to writing.
 (14) `Rule' means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendments or repeal of a rule. The term does not include:
 (a) Internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public and which have no application outside the agency issuing the memorandum. (Emphasis supplied.)
In Price Wise Buying Group v. Nuzum, 343 So.2d 115 (1 D.C.A. Fla., 1977), the court held that a declaratory statement issued pursuant to s. 120.565, F. S., that is an agency statement of general applicability that implements and prescribes policy was a rule within the meaning of s. 120.52(14), F. S. In Straughn v. O'Riordan, 338 So.2d 832 (Fla. 1976), the Supreme Court invalidated agency `guidelines' which were determinative whether bonds for sales tax collections were necessary under a statute that authorized such bonds when `necessary to insure compliance with the provisions of [sales tax laws].' The court held such guidelines to be rules and required their adoption under the Administrative Procedure Act.
As stated in AGO 076-123:
 This quasi-legislative act [rule making] can be generally defined as being: primarily concerned with policy considerations for future rather than the evaluation of past conduct; based not on evidentiary facts but on policy making conclusions to be drawn from facts; action affecting an entire class rather than individuals of the class, and action when particular members of the class are not singled out for special consideration based on their own facts.
In approving a proposed agreement establishing a regional water supply authority pursuant to s. 373.1962, supra, the Department of Environmental Regulation is to consider the following factors:
 (a) Whether the geographic territory of the proposed authority is of sufficient size and character to reduce the environmental effects of improper or excessive withdrawals of water from concentrated areas.
 (b) The maximization of economic development of the water resources within the territory of the proposed authority.
 (c) The availability of a dependable and adequate water supply.
 (d) The ability of any proposed authority to design, construct, operate, and maintain water supply facilities in the locations, and at the times necessary, to insure that an adequate water supply will be available to all citizens within the authority.
 (e) The effect or impact of any proposed authority on any municipality, county, or existing authority or authorities.
 (f) The existing needs of the water users within the area of the authority. [Section 373.1962, F. S.]
In making the determination whether a proposed agreement establishing a regional water supply authority is in the public interest and complies with the intent and purposes of Ch. 373,supra, by considering the above enumerated factors, it is my opinion that the agency is not implementing or prescribing law or policy so as to constitute the adoption of a rule within the meaning of s. 120.52(14), supra. Rather, this agency action seems primarily concerned with a determination of evidentiary facts affecting individual governmental entities or individual members of a class whose interests are singled out for special consideration. I, therefore, conclude that such agency action is not a rule but constitutes an order under s. 120.52(9), supra. Final action on such orders is vested in the Secretary of the Department of Environmental Regulation as head of the department pursuant to ss. 20.05(1)(a), and 20.261(1), F. S. Furthermore, from a reading of Ch. 75-22, supra, I find no authority granted to the commission to exercise final action on such orders. However, pursuant to s. 6 of Ch. 75-22, as above quoted, the commission acts `as an adjudicatory body for final actions taken by the department' with certain exceptions not pertinent herein. Therefore, even though the secretary as head of the Department of Environmental Regulation takes final action on the approval or denial of agreements establishing regional water supply authorities pursuant to s. 373.1962, supra, nevertheless, the commission shall hear such determinations in an appellate capacity. Your question is therefore answered that the Secretary of the Department of Environmental Regulation is to take final action in approving agreements establishing regional water supply authorities pursuant to s. 373.1962, supra, but appeals of such determinations are made to the Environmental Regulation Commission.
Prepared by: J. Kendrick Tucker Assistant Attorney General