705 So.2d 81 (1997)
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Appellant,
v.
Gary SCHLUTER and The Florida Association of State Troopers, Inc., Appellees.
No. 97-730.
District Court of Appeal of Florida, First District.
December 31, 1997.
Rehearing Denied January 30, 1998.
Enoch J. Whitney, General Counsel, Judson M. Chapman, Assistant General Counsel, Department of Highway Safety and Motor Vehicles, Tallahassee, for Appellant.
Jerry G. Traynham of Patterson & Traynham, Tallahassee, for Appellees.
ERVIN, Judge.
The Department of Highway Safety and Motor Vehicles (Department) appeals a final *82 order of the administrative law judge (ALJ) determining that each of six policies, which the Florida Highway Patrol follows in investigating allegations of employee misconduct, constitutes a rule that was never adopted in compliance with section 120.54, Florida Statutes (Supp.1996). The Department asserts that the ALJ erred in determining that its six challenged policies constituted rules, as defined in section 120.52(15)(a), Florida Statutes (Supp.1996). We reverse as to the first three of the Department's policy statements, but affirm as to the remaining three.
The prehearing stipulation described five of the challenged policies in the following language:
[1.] The Respondent has a policy of removing law enforcement officers under investigation, in certain circumstances, from their normal duties, and assigning them indefinitely to remain in their own residences as a duty station, and permitting them to leave their residences during duty hours only with the permission of their superiors.
[2.] The Respondent has a policy of ordering law enforcement officers under investigation, in certain circumstances, to have no contact with any person who may be a witness in the course of the investigation.
[3.] The Respondent has a policy of prohibiting law enforcement officers under investigation, in certain circumstances, from earning extra compensation by working in police off-duty employment.
[4.] The Respondent has a policy of denying public records access to records and information gathered during the course of an investigation of a law enforcement officer which are not related to a written complaint against the officer.
[5.] The Respondent has a policy of providing every witness from whom an investigator seeks information with the identity of the person under investigation.
In addition, the ALJ found as a matter of fact in respect to the sixth (and only other) policy involved:
[6.] Respondent has an unwritten policy of refusing to allow the legal representative of a law enforcement officer to speak on the record during the course of an administrative or investigative interview with an officer, or to permit a consultation between an employee and counsel prior to the employee's answer to a question.
Section 120.52(15)(a), provides:
"Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule. The term does not include:
(a) Internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public and which have no application outside the agency issuing the memorandum.
From a plain reading of the above statute, it appears that the analysis as to whether an agency's policy statement complies with the definition of a rule requires first a determination regarding whether the policy can be said to be one of general applicability, and, if so, whether the internal memorandum exception applies.
We agree with appellant that the first three of the six policies do not constitute rules. They cannot be considered statements of general applicability because the record establishes that each was to apply only under "certain circumstances." Consequently, as in Department of Highway Safety & Motor Vehicles v. Florida Police Benevolent Ass'n, 400 So.2d 1302 (Fla. 1st DCA 1981), these statements should be considered effective merely as guidelines, in that their application was subject to the discretion of the employee's supervisor. The Department's first three declarations cannot be said to have been "intended by their own effect to create rights, or to require compliance, or otherwise to have the direct and consistent effect of law." McDonald v. Department of Banking & Fin., 346 So.2d 569, 581 (Fla. 1st DCA 1977) (emphasis added). We therefore reverse the ALJ's determination that they constituted rules under section 120.52(15).
*83 The final three policies, however, do apply uniformly to all law enforcement officers employed by the Department without exception. On their face, they comply with section 120.52(15)'s definition of a rule as agency statements of general applicability that prescribe the Department's procedure or practice requirements pertaining to officers under investigation. Virtually the only evidence the ALJ had before him regarding this issue was the parties' stipulation pertaining to law enforcement officers under investigation. Given the form of such evidence, we conclude that the ALJ must be considered to have competent, substantial evidence from which he could lawfully find, as to the final three stipulated statements, that the Department had an established policy that had been systematically communicated to the agency personnel with the intention that it be implemented with the force of law. Indeed, such a conclusion is manifest in the language particularly contained in policy number 5, disclosing that the Department "has a policy of providing every witness from whom an investigator seeks information with the identity of the person under investigation." (Emphasis added.)
The word "policy," used in each of the three statements, is not a term of art. It has a commonly understood meaning. It is defined by one source as "a principle, plan, or course of action, as pursued by a government, organization, individual, etc." Webster's New World Dictionary 1102 (2d college ed.1980). We therefore affirm the ALJ's order as to his determination that the final three policies constituted invalid, nonadopted rules.
The only remaining question is whether these three policy statements can be said to be subject to the internal memoranda exception to the statutory definition of a rule. They are not.
The internal management memorandum exception, as statutorily defined, cannot apply if the private interests of any person are affected by the policy. In this case, the private interests of each officer placed under investigation are affected, because the policies restrict the means by which the employee can defend himself or herself against disciplinary charges which, if established, could lead to separation or dismissal from employment, thereby affecting the officer's property right to continued employment. Pursuant to the Police Officer's Bill of Rights, codified at sections 112.531 through 112.535, Florida Statutes (1995), highway patrol officers have a property interest in continued employment. See Grice v. City of Kissimmee, 697 So.2d 186 (Fla. 5th DCA 1997). Such property interest is also created by section 321.06, Florida Statutes (1995), which provides that highway patrol officers may only be disciplined for cause. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494 (1985) (Ohio statute providing that civil service employees are entitled to retain their positions unless they commit acts of misfeasance, malfeasance, or nonfeasance, plainly creates a property interest in continued employment). Once the legislature has conferred a property interest in public employment, such interest may not be deprived without appropriate due process procedures. Id. at 541, 105 S.Ct. at 1492-93. The Court in Loudermill expressly characterized an employee's property interest in retaining employment as a "private interest." Id. at 542-43, 105 S.Ct. at 1493-94. Accordingly, the policies that the agency has established, which either protect or impair employees' procedural safeguards in proceedings which could potentially deprive an employee of his or her continued employment, also necessarily affect the employee's private interests. Therefore, these policies do not fit within the internal management memorandum exception.[1]
*84 The dissent's primary focus, as to the last three of the disputed procedures, appears to be that because none of the statements had been reduced to writing before the stipulation was entered, they could not be considered to comply with section 120.52(15)'s definition of rule. In espousing this position, Judge Benton has failed to cite any authoritative legislative or judicial source for his novel contention. Indeed, his reference to Straughn v. O'Riordan, 338 So.2d 832, 834 n. 3 (Fla.1976), which appears in footnote 5 of the concurring and dissenting opinion, supports an opposite conclusion. Nothing in Straughn reveals that the court's decision was influenced by the existence of written standards. In fact, the quotes from Straughn regarding "`unwritten rules'" and "invisible policy-making" strongly suggest the contrary.
Even if it were possible to interpret Straughn as implying that the standards there attacked had been reduced to writing,[2] any decision which requires a writing as a necessary ingredient of an unpublished rule is, in our judgment, clearly at variance with the legislative purpose behind the adoption of the 1974 Administrative Procedure Act. Justice England, the author of the Straughn opinion, was the reporter to the 1974 legislature and, in such capacity, furnished it with invaluable assistance in drafting the Act. See 3 Arthur J. England, Jr. & L. Harold Levinson, Florida Administrative Practice Manual, "Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, March 9, 1974" (1995-97) (hereinafter "Reporter's Comments"). Both the Florida Supreme Court and this court have frequently cited Justice England's comments as a primary source of the legislative intent behind the Act's creation. See, e.g., Florida Home Builders Ass'n v. Department of Labor & Employment Sec., 412 So.2d 351, 353 n. 2 (Fla.1982); Florida Real Estate Comm'n v. Webb, 367 So.2d 201, 203 n. 4 (Fla.1978); Lewis v. Judges of Dist. Ct. of App., First Dist., 322 So.2d 16, 19 n. 6 (Fla.1975); Friends of the Hatchineha, Inc. v. State, Department of Envtl. Reg., 580 So.2d 267, 271 (Fla. 1st DCA 1991); Alterman Trans. Lines, Inc. v. Department of Transp., 519 So.2d 1005, 1007 (Fla. 1st DCA 1987); McDonald v. Department of Banking & Fin., 346 So.2d 569, 582 n. 9 (Fla. 1st DCA 1977).
In his prefatory comments relating to the six principal goals leading to the adoption of the 1974 Administrative Procedure Act, the reporter listed two which are highly pertinent to the appeal now before us. The Act was devised in an effort "to remedy massive definitional, procedural and substantive deficiencies in existing law (i) by prescribing due process minima for the operation of Florida administrative agencies ... [and] (v) by broadening public access to the precedents and activities of agencies." Reporter's Comments, at 3. Obviously, an interpretation of the 1974 Act which fails to require an agency to comply with rulemaking simply because its policy statements were unwritten could not be said to have complied either with the declared legislative purpose of prescribing due process minima or of broadening public access to the precedents of the particular agency. In regard to the public notice objective, the reporter made the following pertinent comments:
The present act falls far short of providing due process minima in connection with the actions of state agencies. Practices have been developed by several agencies which provide even less fairness than the act would seem to require. The notions of basic fairness which should surround all governmental activity, such as the opportunity for adequate and full notice of agency activities, the right to present viewpoints and to challenge the view of others, the *85 right to develop a record which is capable of court review, the right to locate precedent and have it applied, and the right to know the factual bases and policy reasons for agency action, are neither uniformly nor universally applied in Florida.
Reporter's Comments, at 5 (footnote omitted).
Judge Benton also refers to Department of Corrections v. McCain Sales of Florida, Inc., 400 So.2d 1301 (Fla. 1st DCA 1981), as authority for his position that the statements at issue should be in writing in order to be rules. We have found no language in McCain stating that an agency's policy, which otherwise complies with section 120.52(15)'s definition of rule, cannot be considered a rule simply because the policy was not reduced to writing. In fact, it appears to us that the McCain decision was largely motivated by the court's expressed preference for adjudicative processes over rulemaking. In reversing the hearing officer's order invalidating as an illicit rule the Department of Correction's program for the manufacture of metal signs, the court concluded with the following admonitory comment:
Now more than ever it is appropriate to allow these incentives for rulemaking to work in other proceedings rather than to subject marginal cases to the difficult semantic debate that our early decisions encouraged in rule-challenge proceedings against nonrule policy.
Id. at 1302.
The court's partiality in such regard was underscored in another case decided the same day, Department of Highway Safety & Motor Vehicles v. Florida Police Benevolent Ass'n, 400 So.2d 1302, 1303-04 (Fla. 1st DCA 1981), wherein it observed: "In marginal rule challenges such as this ... the public interest is now better served by permitting other incentives for rulemaking to operate in Section 120.57 proceedings." No doubt these two cases and other cases decided during the same general period can perhaps be best understood as an outgrowth of what we had earlier declared in McDonald v. Department of Banking & Finance, 346 So.2d 569, 581 (Fla. 1st DCA 1977), encouraging resort to the adjudication procedures available to substantially affected parties under section 120.57, Florida Statutes, rather than rule challenges to incipient agency action. As McDonald had explained: "The folly of imposing rulemaking procedures on all statements of incipient policy is evident [,]" because to do so will hardly encourage agencies to "structure their discretion progressively by vague standards, then definite standards, then broad principles, then rules." Id. at 580.
The judicial preference for adjudication over rulemaking became so pronounced that at one point this court declared:
The time has long since passed (if ever it existed) that agency action was mechanically invalidated simply because no rule was in effect. Certain opinions from this court during our early experience with Florida's 1974 Administrative Procedure Act may have so indicated. Our academic endeavors in attempting to label the action either rule or nonrule to determine whether or not it fell within section 120.52(14)'s [now renumbered as 120.52(15)] definition of a rule have now been largely discarded.
Barker v. Board of Med. Examiners, 428 So.2d 720, 722 (Fla. 1st DCA 1983).
The judicial gloss which this court placed on chapter 120, Florida Statutes, has, however, since been legislatively discarded.[3] As is *86 reflected in the concurring and dissenting opinion, the 1991 legislature expressed, in no uncertain terms, its selection of rulemaking over adjudication as the primary means of policy development. By enacting section 120.535, Florida Statutes, the legislature clearly disapproved the judiciary's interpretation of the Act, which had indicated that rulemaking was primarily a matter of agency discretion. This statute required each agency statement that met the definition of rule to be adopted as such as soon as feasible and practicable.[4] As a result of these recent legislative amendments, it clearly appears that it was the legislature's intention to remove from agencies the discretion to decide whether or not to adopt rules.
Under the circumstances, we find no support for Judge Benton's argument that an agency's policy statement must be in writing before it can be considered a nonadopted rule.
AFFIRMED in part, REVERSED in part, and REMANDED.
DAVIS, J., concurs.
BENTON, J., concurs and dissents with opinion.
BENTON, Judge, concurring and dissenting.
Without reaching the contention that these policies fall, in any event, within the realm of the statutory exception for internal management memoranda, I would reverse the final order in toto, not merely in part. None of the hitherto virtually unarticulated policies petitioners challenge as unpromulgated rules amounts to an "agency statement of general applicability that implements, interprets, or prescribes law or policy." § 120.52(15), Fla. Stat. (Supp.1996).
When a substantially affected party initiates a rule challenge,[1] an administrative law judge can call to account an agency that seeks, without adhering to statutorily prescribed rulemaking procedures, to put rules in place de facto.[2] An agency policy statement "of general applicability" effective by its own terms statewide  but never adopted in the manner specified by section 120.54, Florida Statutes (Supp.1996), or its predecessors  cannot withstand challenge under section 120.56(4), Florida Statutes (Supp.1996).[3]State, Dep't of Admin. v. Stevens, 344 So.2d 290 (Fla. 1st DCA 1977). It is also true, as was said in State, Department of Administration, Division of Personnel v. Harvey, 356 So.2d 323, 325 (Fla. 1st DCA 1977), that susceptibility to challenge turns on the "effect" of the agency statement (if there is such a statement), "not on the agency's characterization of the statement by some appellation other than `rule.'" But only statements made by an agency in circumvention of rulemaking requirements justify the grant of a section 120.56(4) petition.
The threshold question in the present case is whether any of the policies at issue found *87 expression as agency statements (attributable to appellant's collegial head, § 20.24(1), Fla. Stat. (1995), or some duly authorized delegate) intended to have the preclusive effect of law.
"Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule.
§ 120.52(15), Fla. Stat. (Supp.1996). The order under review should be reversed because none of the policies at issue was enunciated as an "agency statement" intended to have the force and effect of law and falling within the definition set out in section 120.52(15), Florida Statutes (Supp.1996).
The general orders at issue in Department of Highway Safety and Motor Vehicles v. Florida Police Benevolent Association, 400 So.2d 1302 (Fla. 1st DCA 1981) came much closer to agency statements falling within the definition of "rule." But the general orders were held not to qualify as rules because they "were effective in themselves only as guidelines, subject in application to the discretion of the enforcing officer." Id. at 1303. "[R]ulemaking procedures are imposed only on policy statements ... intended by their own effect to create rights, or to require compliance, or otherwise to have the direct and consistent effect of law." McDonald v. Department of Banking and Fin., 346 So.2d 569, 581 (Fla. 1st DCA 1977).
Petitioners below did not prove the existence of a writing purporting to govern agency action in any binding way. Most of the policies challenged as illicit and unauthorized rules were never reduced to writing until the parties prepared a prehearing stipulation in the course of the proceedings below. The first three policies  each of which was stipulated to apply only "in certain [unspecified] circumstances"  arguably have some connection to language in the Florida Highway Patrol's policy manual.[4] But the last three  *88 the policies the majority deems rules  have no written basis whatsoever. With rare exception,[5]
[m]ere "unwritten policy" cannot amount to an illicit rule. Department of Corrections v. McCain Sales of Florida, Inc., 400 So.2d 1301 (Fla. 1st DCA 1981)("a program as such is not a statement of policy" at 1302). A rule is a statement "of general applicability ... applied and ... intended to be applied with the force of a rule of law." State, Department of Administration v. Stevens, 34[4] So.2d 290, 296 (Fla. 1st DCA 1977); McDonald v. Department of Banking and Finance, 346 So.2d 569, 580-581 (Fla. 1st DCA 1977).... A policy implicit in agency action does not ipso facto amount to an administrative rule, even when it has been consistently applied. Home Health Professional Services, Inc. v. Department of Health and Rehabilitative Services, 463 So.2d 345 (Fla. 1st DCA 1985).
Hill v. State, Dep't of Natural Resources, 7 F.A.L.R. 5236, 5241-42 (Fla. Div. of Admin. Hearings 1985). Reversing in Department of Corrections v. McCain Sales of Florida Inc., 400 So.2d 1301, 1302 (Fla. 1st DCA 1981), we rejected the hearing officer's analysis, after setting the analysis out, as follows:
Here the Department has, apparently, not set forth its decision to engage in a metal sign manufacturing program in a formal *89 written statement. Certainly no such written statement was offered into evidence. However, it is patently clear from the evidence that the Department has expressed in a non-verbal way its decision to engage in the subject program. The actions of the Department culminating in the invitation for bids clearly express the adoption by the Department of a metal sign manufacturing program. It is therefore concluded that the agency statement proved by the Petitioners is the decision by the Department to adopt a metal sign manufacturing program, as one of its correctional work programs under Section 945.06, Florida Statutes.
We held in McCain that "an agency program reflects its policy, to be sure, but a program as such is not a statement of policy." Id. See also Hill; Joshua Water Control Dist. v. Department of Natural Resources, 11 Fla. Supp.2d 182 (Fla. Div. of Admin. Hearings 1985). Here petitioners did not prove even a program. Their evidence pertained largely to the course of the Department's investigation of a single employee, Mr. Schluter.
Unstated "policy implicit in agency action does not amount to an administrative rule just because it has been consistently applied." Joshua Water Control Dist., 11 Fla. Supp.2d at 186. Accord Water Oak Management Corp. v. Department of Bus. Regulation, Div. of Fla. Land Sales, Condominiums, and Mobile Homes, No. 89-6776RX, http://www.doah.state.fl.us/pcdocs/1989/89-6776.doc (Fla. Div. of Admin. Hearings 1989); Pan Am. Hosp. Corp. v. Department of Health and Human Servs., No. 81-1480RX, http:// www.doah.state.fl.us/pcdocs/1981/81-1480.doc (Fla. Div. of Admin. Hearings 1981). Statutes dictate agency policy and govern agency action with or without implementing rules.
Absent other proof of comprehensive dissemination, the failure to formulate the challenged policies in writing (before the prehearing stipulation was drafted) requires the conclusion that these policies were not agency statements intended to have the force and effect of law. "The initial question is whether the nonrule policy statement was made by the agency." All Children's Hosp., Inc. v. Agency for Health Care Admin., 19 F.A.L.R. 2834, 2843 (Fla. Div. of Admin. Hearings 1997). The evidence as a whole does not demonstrate that any of these policies was ever stated with the intent to create rights or require compliance or otherwise to have the effect of law.
As petitioners below, appellees did not show that any statement of the policies they questioned was "issued by the agency head for implementation by subordinates with little or no room for discretionary modification." State, Dep't of Admin. v. Stevens, 344 So.2d 290, 296 (Fla. 1st DCA 1977). This record does not establish that memoranda or other statements of the policies actually challenged below "were virtually self-executing," Florida State Univ. v. Dann, 400 So.2d 1304, 1305 (Fla. 1st DCA 1981), or even that such memoranda or other statements existed. See State, Dep't of Commerce v. Matthews Corp., 358 So.2d 256, 259 (Fla. 1st DCA 1978) (holding agency's policy was not "a statement of general applicability to which the strictures of formal rulemaking apply").
In the final order under review, the administrative law judge determined that each of six policies which the Florida Highway Patrol usually, if not invariably, follows, in investigating allegations of employee misconduct, "constitutes a rule under provisions of Section 120.52, Florida Statutes (Supp.1996) ... [never] adopted in compliance with Section 120.54, Florida Statutes (Supp.1996)." The majority approves this characterization of half the challenged policies, but concludes that the other half do not  only because they contain the phrase "in certain circumstances"  amount to illicit rules. As to the latter, I concur in reversing the final order. I respectfully dissent otherwise, because, in my view, none of the challenged policies amounts to a rule, or was ever intended as such.
NOTES
[1] The few cases in Florida applying the internal management exception have done so on different grounds from those appellant advocates. For example, this court held that guidelines of the Department of Highway Safety and Motor Vehicles, which prescribed standards of physical fitness for highway patrol officers, were exempt from the strictures of rulemaking because they were not self-executing, in that they were subject to the discretion of the supervising officer. See Department of Highway Safety & Motor Vehicles v. Florida Police Benevolent Ass'n, 400 So.2d 1302 (Fla. 1st DCA 1981). In reaching its decision, the court stated that it believed the internal management memoranda exception applied because it failed to perceive how the patrolmen's private interests were affected by the agency's issuance of the guidelines. Obviously, the court's discussion of the exception was immaterial to its decision in that the court had already decided that the agency's policy statements never met the initial statutory definition of rule.
[2] Judge Benton's opinion refers to Straughn, 338 So.2d at 833, n. 2, where it is stated that the standards under challenge had been communicated to the agency's area supervisors via telephone, memoranda and seminar discussions, thereby suggesting a distinction between the facts in Straughn and those at bar, where the Department's policies had been conveyed entirely by oral means.
[3] These legislative changes were no doubt the result of the popular perception that the agencies had frequently abandoned rulemaking in favor of informal policy making. As one highly respected commentator in the field observed:

Before long, however, the limited McDonald exception swallowed the rule. Instead of inquiring into the extent of an agency's knowledge and experience with its nonrule policy to determine whether the nonrule policy was truly incipient and emerging, the courts allowed the agencies themselves to decide whether and when they were ready to proceed to rulemaking. Because the courts were not inclined to police the exercise of agency discretion in this area and the agencies were not interested in losing their discretion, legislative action was necessary to restore some balance between adjudication and rulemaking in the process of policy development.
Patricia A. Dore, Florida Limits Policy Development Through Administrative Adjudication and Requires Indexing and Availability of Agency Orders, 19 Fla. St. U.L.Rev. 437-38 (1991) (footnote omitted).
[4] Section 120.535 has since been deleted, but the pertinent language therein restricting agencies from establishing policy outside the confines of rulemaking has been transferred to section 120.54(1)(a), Florida Statutes (Supp.1996).
[1] Gary Schluter, a former Florida Highway Patrol Officer, filed a petition to determine invalidity of rules. The petition, which was subsequently amended to include the Florida Association of State Troopers (FAST) as an additional petitioner, alleges the existence of certain departmental policies; that the policies lacked statutory authority; and that the policies expressed in the parties' prehearing stipulation (or, in one case, proven at hearing) should be treated as rules which have not been adopted in conformity with Administrative Procedure Act requirements.
[2] Perhaps unique to Florida's Administrative Procedure Act, the rule challenge provisions found in section 120.56, Florida Statutes (Supp. 1996), authorize administrative law judges to invalidate the efforts of other executive branch agency personnel to articulate statutory policy in the form of rules. But primary responsibility for interpreting and implementing the statutes an agency is charged with administering and enforcing rests with that agency. The majority's decision today undermines the ability of an agency with substantive responsibility to discharge that responsibility.
[3] Even though the original petition was filed earlier, section 120.56, Florida Statutes (Supp. 1996), has governed petitioners' rule challenge since October 1, 1996. Life Care Ctrs. of Am., Inc. v. Sawgrass Care Ctr., Inc., 683 So.2d 609 (Fla. 1st DCA 1996).
[4] The parties' prehearing stipulation concerned itself with the substance, not the form, of departmental policy. Petitioners failed to prove that the policies of which they complained had found expression in "agency statements." The only pertinent "agency statements" proven were provisions of the Florida Highway Patrol policy manual, which were not themselves challenged.

The first stipulated policy "of removing law enforcement officers ... and assigning them ... in their own residences as a duty station" does not appear in the Florida Highway Patrol policy manual, which makes no mention of assigning law enforcement officers to home duty. The manual does state that, for a half-dozen different reasons: "Troop commanders and above may place an employee on limited duty or administrative duty with pay pending the outcome of an investigation." But, prehearing stipulation aside, the parties point to no writing that makes reference to officers being assigned to work at home, much less an agency statement purporting to require such assignments.
The second stipulated policy of "ordering law enforcement officers under investigation ... to have no contact with any person who may be a witness in the course of the investigation" is likewise not to be found in the Florida Highway Patrol policy manual. Instead, the manual forbids Florida Highway Patrol Officers' interfering improperly in any investigation:
Members will not induce a witness or any other person who has knowledge regarding any issue under investigation by the Division, or any other law enforcement agency, to make false statements, withhold information, conceal information, absent themselves or otherwise fail to cooperate with lawful investigating authorities.
Again there is nothing else in writing of record, aside from the parties' prehearing stipulation, that sets out the policy petitioners challenged below as being the substance of an illicit rule.
The third stipulated policy purportedly prohibits "law enforcement officers under investigation... from earning extra compensation by working in police off-duty employment." On this subject, the Florida Highway Patrol policy manual specifies seven different circumstances under which members of the Florida Highway Patrol "shall not be allowed to engage in off-duty police employment." One of the seven is: "While assigned to administrative leave which is imposed pursuant to an on-going investigation." Mr. Schluter was never on administrative leave, which cannot last, in any event, more than two weeks, but was assigned to administrative duty that lasted almost a year.
While some testimony suggested that the terms "administrative duty" and "administrative leave" were used interchangeably by certain witnesses, the fact remains that, again apart from the parties' prehearing stipulation, the record was devoid of any writing that purported by its own terms to prohibit off-duty employment by an officer assigned to administrative duty, or stating that merely being investigated precluded off-duty employment.
[5] Clearly an "agency statement" need not be a formal document signed by the agency head. The staff analysis accompanying the 1991 enactment of former section 120.535 indicates that "[t]he word `statement' used in the definition of `rule' is intended to encompass any form of communication by an agency." Fla. H.R. Comm. on Govtl. Ops., HB 1879 at 4 (1991) Final Bill Analysis & Economic Impact Statement (May 22, 1991)(on file with comm.). Enacted to express a legislative preference for rulemaking over adjudication as the primary means of policy development, chapter 91-30, section three, Laws of Florida (creating section 120.535), did not alter the Administrative Procedure Act definition of rule. The term "agency statement" also appears in chapter 91-30, section four, Laws of Florida.

Appellees bring the decisions in Straughn v. O'Riordan, 338 So.2d 832 (Fla.1976) and Matthews v. Weinberg, 645 So.2d 487 (Fla. 2d DCA 1994) to our attention. Neither Straughn nor Matthews arose from administrative challenges to illicit rules brought under section 120.56(4), Florida Statutes (Supp.1996), or predecessor provisions. Both cases involved judicial challenges that reached the appellate courts on appeal of circuit court judgments. In neither case did jurisdiction of the lower tribunal hinge, therefore, on the precise definition of "rule" set out in the Administrative Procedure Act. § 120.52(15), Fla. Stat. (Supp.1996).
The Matthews court's ruling that unwritten policy cannot ipso facto determine the outcome of agency action is undoubtedly correct. But it does not follow that policy an administrative agency never actually "states" should be deemed an unpromulgated rule susceptible to challenge under section 120.56(4), Florida Statutes (Supp. 1996).
One reading of Straughn permits the inference that the unpromulgated "rule of thumb" there at issue had been reduced to writing in one or more memoranda. Obiter dicta in Straughn refer to the Administrative Procedure Act of 1974 as "the new act," saying:
[T]he new act has as one of its principal goals the abolition of "unwritten rules" by which agency employees can act with unrestrained discretion to adopt, change and enforce governmental policy. The term "rule" was broadly defined in the new act to reach precisely the form of invisible policy-making which the Department has employed in the course of enforcing this bonding requirement.
338 So.2d at 834 n. 3. In another footnote, the court quotes detailed findings concerning the form the illicit "rule" took in the case before it:
The trial court's order recites: "It is true that certain criteria have been developed by the Department, and these have been communicated to the Area Supervisors by telephone, memorandums, and by seminar discussions. These criteria have never been promulgated in the form of rules or regulations of the Department. The Department itself, both in its memorandum of law and in the testimony, suggests adequate reasonable criteria for determining both the necessity for and the amount of the bond. These include the existence of outstanding money judgments, the past history of payment or non-payment of sales taxes, issuance of worthless checks, detailed information as to the nature, location, history, and type of business, and details as to ownership or equity of the business by the applicant. As to the amount of the bond, the Department itself has developed a `rule of thumb' by which it considers a bond adequate if it is in the amount of estimated tax collections over a three-month period."
338 So.2d at 833 n. 2. The possibility must be allowed (although nothing of the kind was proven here) that, even in the absence of a writing, a statement of sufficient clarity and generality could be systematically communicated to agency personnel with the intention and effect that it be implemented with the force of law.