697 So.2d 186 (1997)
David GRICE and Paul MacPherson, Appellants,
v.
CITY OF KISSIMMEE and Kissimmee Police Department, Appellees.
Nos. 96-2455, 96-2454.
District Court of Appeal of Florida, Fifth District.
July 18, 1997.
*187 Thomas J. Pilacek, of Thomas J. Pilacek & Associates, Maitland, for Appellants.
Brenda Lee London, of Brenda Lee London, P.A., Orlando, for Appellees.
HARRIS, Judge.
This consolidated appeal challenges the dismissal of officers Grice and MacPherson by the City of Kissimmee. In each case, the issue is whether the officers were afforded procedural due process during their post termination proceedings. We will consider the facts of their cases individually.

GRICE
An internal investigation was conducted involving David Grice after a complaint was received by the Kissimmee Police Department that Grice, while working off duty in an apartment complex, wrongfully entered an apartment and assaulted an occupant thereof. There is no allegation that the internal investigation was not conducted in conformance with the provisions of section 112.532(1), Florida Statutes, and the applicable provisions of the Kissimmee City Charter and ordinances. Grice was given the appropriate notices, the witnesses were placed under oath, and their statements were preserved and furnished to Grice. Grice's defense was that he had the consent of the lessee of the unit to enter the apartment on the occasion that produced the complaint. However, he testified under oath as follows:
[A neighbor informed Grice that there was excessive noise coming from Apartment 36B. He went to the apartment to investigate the noise.]
A. And when Mike opened up the door? And he said who are you? And I said I am a neighbor and I am also a police officer. And he backed away from the door and he went toward the living room. So, I tried opening the door, and there was implied consent there. And I stayed by the foyer inside the door. And I yelled in for Karen.

*188 Q. Did you actually enter the apartment?
A. I had. I was in the foyer. He opened up the door, he left it open and walked away. I don't know if Karen or Sharon told him who, his neighbor. I am sure somebody would have mentioned something about that I was a police officer that I was next door. I know both of the girls, Sharon and Karen knew that I was a police officer. They've seen me in uniform. And they have seen me in that before.
Q. Did you ever see this gentleman before?
A. Never.
Q. Okay go ahead.
A. So while I was at the door I was yelling for Karen. And then I Iooked toward Mike on the couch. I said why don't you come over here and talk to me. Step outside and let's find out what's going on. And he wouldn't respond and Karen didn't respond. So I kept talking to Mike since he was near. I said come on over here and talk to me and find out. Let's find out what's going on here. He came over to the door. And he grabbed the door and he started to push that door on to me in a slamming manner. And I pushed the door back and I said don't hurt me. I said you don't have to do that. You don't have to hurt me.
* * * * * *
A. So when I pushed the door back he went tumbling back towards the table and back towards the bedroom. And so I yelled for Karen. I said Karen come out here and talk to me. We got a problem here.
* * * * * *
Q. Excuse me, was there a table or lamp there or something like that got knocked over?
A. Yeah he knocked that over when he was retreating backwards.
After reviewing the internal investigation report, the Police Chief notified Grice of the chief's intention to terminate him. The chief gave as his reason:
Based on your own statements, you did not have the authority to enter the apartment. You never properly identified yourself as a police officer during your initial contact with Mr. Tores and though you told Mr. Tores that you could arrest him for Battery on a Law Enforcement Officer, there was no evidence to justify an arrest. Your actions clearly demonstrate you used poor judgment in handling this situation. These findings constitute violations of the City Policy and Kissimmee Police Department Standard Operating Procedures which include incompetency or inefficiency in the performance of assigned duties in employee's position. Sworn personnel shall not abuse the authority conferred upon them or the trust of the community they are sworn to serve. Sworn personnel shall not take any police action which they know, or should know, is not in accordance with law.
The Police Chief then discussed Grice's prior disciplinary actions, which included a suspension for striking an arrestee with a flashlight, a written reprimand for improper demeanor during a phone call with a telecommunicator, and a "note to the file" regarding Grice's improper use of pepper spray. The chief then gave Grice three days to submit any written presentation to him before the termination would be final. He also advised Grice that he could appeal his termination to the City Manager. Grice elected to appeal.

MACPHERSON
MacPherson's termination resulted from two separate complaints and sequential investigations. First, his wife complained that he was having an affair while on duty. She alleged that there were three separate paramours. An internal investigation was conducted and, based on a finding that MacPherson had indeed been involved in an adulterous affair with one woman while on duty and had improper meetings with another woman while on duty, a suspension was ordered. There was and is no complaint about this suspension or the proceedings related to it. Subsequently, however, after MacPherson returned to his wife, the paramour involved in the improper meetings filed a complaint alleging that not only had she continued to meet with MacPherson while he *189 was on duty after his suspension, but that she also had sex with him on two occasions while he was on duty (a fact previously denied under oath by MacPherson) and that MacPherson had displayed his badge during his previous suspension (a fact also denied under oath by MacPherson). The earlier investigation was reopened to investigate possible perjury by MacPherson.
During the renewed internal investigation, MacPherson continued to deny that he had sex with the complainant while on duty and denied that he had displayed his badge as alleged. His testimony was contradicted by the complainant's sworn testimony. Further, both MacPherson and the complainant took polygraph examinations (MacPherson's at his request). The complainant passed the examination. MacPherson's test indicated "deception." MacPherson was advised that he was going to be terminated because "of immoral... conduct ... on or off the job ..." Since he had been previously suspended for his prior adulterous conduct with one woman and his improper meetings with complainant (sexual conduct between MacPherson and the complainant had not been previously determined), this reference must indicate either a second punishment for the previous offense or a new finding that MacPherson did in fact have sex with the complainant. A separate ground for his termination was a finding that he had been untruthful during the previous investigation.
MacPherson was offered the opportunity to present a written response within three days and was advised of his right to appeal to the City Manager. He elected to appeal.

APPEAL
In both instances, the City Manager, without conducting a formal hearing, reviewed the internal investigation report and the action of the Chief of Police and determined that the evidence was sufficient and the punishment appropriate. Grice and MacPherson sought certiorari in the Circuit Court. The court granted certiorari and, in a summary ruling, ordered that the City reinstate both employees.

BACKGROUND

BEFORE THIS COURT
This is the second appearance of these consolidated cases before this court. In City of Kissimmee v. Grice, 669 So.2d 307 (Fla. 5th DCA 1996), we reversed the "Per Curiam Reversal" entered by the trial court because the law requires appropriate reasons when an action is reversed. Although the court's summary order implied a finding that the firing of the two policemen was not an "executive decision" and therefore a post-termination due process hearing should have been granted, we held that the City was entitled to a specific finding on that issue and an explanation as to why the City's appellate process was inadequate. In reliance on Grice, we took the same action in City of Kissimmee v. MacPherson, 670 So.2d 194 (Fla. 5th DCA 1995). On remand, however, a newly assigned judge determined that the firings were "executive decisions" as defined by De Groot v. Sheffield, 95 So.2d 912 (Fla.1957), and dismissed the certiorari actions. Grice and MacPherson are here again.

THE GOVERNING LAW
The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, s.1. Whether the federal due process rights apply to this situation, therefore, depends on whether the officers have a "property interest" in their positions. The officers assert that they have such an interest because they were "permanent status, non-probationary Police Officers." But that was the case also in Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684(1976), in which the United States Supreme Court held:
A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.
Even though the officer in Bishop was a permanent (as opposed to probationary) officer and even though the city ordinance specifically listed certain reasons that would justify *190 discharge, the court upheld the finding of the lower courts that the officer was, in fact, an employee at will. This is because the court accepted the lower court's interpretation of North Carolina law.
Although the City urges in this proceeding that the decision to terminate the officers was an executive decision, it does not urge that the officers were either probationary employees[1] or employees at will. The City does not contest the applicability of the "Police Officer's Bill of Rights" [sections 112.531-112.535, Florida Statutes]. We hold that the rights conferred by this provision give police officers a property interest in their positions.
Having so held, and recognizing that this gives the officers a right to a due process hearing before their termination can become final, what are their due process rights? We are told in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), that any termination must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." The officers concede that the hearing before termination was sufficient to remove them so long as they were given a meaningful post-termination hearing that would permit them to challenge the witnesses against them face-to-face. This would properly balance the City's right to remove an unsatisfactory employee without undue delay and the employee's right to a full and fair review of the City's action. The Loudermill court described this balancing of competing interest as follows:
These are the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination.
470 U.S. at 542-43, 105 S.Ct. at 1493.
And although Loudermill does not specifically require that an adversial hearing be held in termination cases, the United States Supreme Court earlier held in Goldberg v. Kelly, 397 U.S. 254, 268, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970), a case involving termination of welfare benefits: "Thus a recipient is not permitted to present evidence to that official orally, or to confront or cross-examine adverse witnesses. These omissions are fatal to the constitutional adequacy of the procedures." It seems, therefore, that if the City is going to terminate someone on the basis of the testimony of other witnesses then the officer must, as a matter of constitutional due process, at some pointeither at a pre-termination hearing or at a post-termination hearingbe permitted to confront those witnesses and cross-examine them.

CERTIORARI REVIEW
In a certiorari review, the appellate court merely examines the record made below to determine whether the lower tribunal had before it competent substantial evidence to support its findings and judgment, which must accord with the essential requirements of law. On that basis, we determine that the court below erred in finding that the firings were mere executive decisions. Police officers are not "at will" employees. They are entitled to a hearing at which it must be established that there are reasons for termination. Because there must be a hearing and because termination is proper only when the facts established at the hearing justify it, the decision to terminate is quasi-judicial and the opportunity for appropriate review is required. We, therefore, take the following action.

AS TO GRICE
We agree with the trial court that Grice was not denied due process of law. The internal investigation conducted by the police department was both complete and fair. He was given appropriate notice and was given the opportunity to respond and to give his side of the matter. Since the decision to terminate Grice was made solely on the admissions made by him during his testimony, there simply was no constitutional requirement to permit him to confront or *191 cross-examine himself. He did not contend that his termination was discriminatory. He neither alleged nor offered any showing that other police officers with a record similar to his, an officer who had previously been suspended for striking an arrestee with a flashlight, been reprimanded for improper demeanor in a phone call with a telecommunicator, and written up for the improper use of pepper spray would not be terminated for illegally entering the apartment of another and inviting the occupant thereof outside so they could determine what was going on. We find no error in the trial court's refusal to intervene in this action.

AS TO MACPHERSON
We find that MacPherson was indeed denied procedural due process of law when his termination was based on the testimony of a complainant whose testimony he disputed, and he was not accorded the opportunity to confront and cross-examine her. We therefore find that the court's denial of certiorari as it relates to MacPherson was not in accord with the essential requirements of law and reverse and remand for further consideration by the trial court. MacPherson urges that he is entitled to immediate reinstatement and back pay. He is premature. As pointed out in Metropolitan Dade County v. Sokolowski, 439 So.2d 932, 935 (Fla. 3d DCA 1983):
In determining the appropriate remedy for the violation of due process rights, we have reviewed the pertinent law. Applicable cases are consistent in holding that awards of back wages are improper. In Wilson v. Taylor, 658 F.2d 1021 (5th Cir.1981), a police officer was discharged for allegedly associating with a mobster. Although the court determined that he had been denied procedural due process rights between his termination and his first hearing, he could not recover lost wages or retirement benefits without proving that the dismissal itself was invalid. In County of Monroe v. Department of Labor, 690 F.2d 1359 (11th Cir.1982) the complainant was not afforded a hearing for 14 months after filing a grievance. The court of appeals concluded that a party may recover nominal damages for deprivation of procedural due process, but a greater recovery required a showing of actual compensable injury. The court held that injury caused by justified termination was not compensable in the form of back pay.
We are not here determining whether MacPherson's termination was justified or not. The City apparently has a policy similar to the one utilized by the Air Force: adultery alone merits a warning (or a 40 hour suspension as in this case); adultery after warning coupled with lying about it merits termination. It is up to the City through the proper officials to determine its standards of conduct and the believability of the witnesses. We are only concerned that the City's procedures meet all due process requirements.
It is suggested, therefore, that the trial court remand the case to the City with instructions that it either reinstate MacPherson with back pay or conduct a new termination hearing with appropriate due process safeguards.
AFFIRMED in part; REVERSED in part and REMANDED.
GOSHORN and ANTOON, JJ., concur.
NOTES
[1] See City of Miami v. Judges of the Eleventh Judicial Circuit, 680 So.2d 1129 (Fla. 3d DCA 1996).