710 So.2d 1030 (1998)
Harry REIFF, Psy. D.,
v.
NORTHEAST FLORIDA STATE HOSPITAL, Appellee.
No. 97-377.
District Court of Appeal of Florida, First District.
May 27, 1998.
*1031 M. Christopher Bryant and Kenneth G. Oertel of Oertel, Hoffman, Fernandez & Cole, P.A., Tallahassee, for Appellant.
Dennis M. Flath, Northeast Florida State Hospital, MacClenny, for Appellee.
ERVIN, Judge.
Dr. Harry Reiff, a licensed psychologist and Director of Psychological Services at Northeast Florida State Hospital (NEFSH), appeals a final administrative order which dismissed his rule challenge to certain bylaws approved by the Professional Staff Organization (PSO) of NEFSH. Dr. Reiff argued that the bylaws met the definition of rule, as provided in section 120.52(16), Florida Statutes (1995); hence they were invalid in that they had not been formally adopted. We agree and reverse.
In addition, Dr. Reiff alleged in his petition that the bylaws violate section 395.0191, Florida Statutes (1995), because they exclude licensed psychologists from obtaining certain clinical privileges and rights of staff membership that they are otherwise authorized to perform under the licensing laws of chapter 490. Section 395.0191(1) prohibits licensed hospitals from discriminating against licensed health care professionals, including psychologists, when awarding clinical privileges. Because we conclude that NEFSH should have promulgated the bylaws as a rule, we do not decide whether they are discriminatory.
NEFSH is a treatment hospital for the mentally ill, most of whom are involuntarily committed under the Baker Act and some of whom are admitted as forensic patients. The PSO bylaws, applicable only to NEFSH employees, establish the privileges available to licensed health care professionals at the hospital and include privilege request forms enumerating the various privileges permitted.
Under the bylaws, only NEFSH physicians are privileged to engage in admission and discharge from the hospital, hospital policy-making, authorization of outside clinical procedures, treatment of life-threatening emergencies, and participation in emergency drills. Patients are admitted by court order, but there is an internal admitting procedurethe process of beginning the evaluation, diagnosis, and treatment of each patientwhich is the exclusive province of physicians, including psychiatrists, but not psychologists. Only physicians, including psychiatrists, may be assigned as attending professionals to determine care and enter treatment orders in the patients' records. In addition, each patient is monitored by a core treatment team, which consists of a psychiatrist, nurse, social worker and mental health professional, but, once again, not a psychologist. Only a psychiatrist or other medical doctor may enter an order recommending discharge of a patient to the hospital administrator.[1] Florida law authorizes psychologists to perform each of the responsibilities enumerated above that the PSO bylaws permit only physicians/psychiatrists to perform.
Following the rule-challenge proceeding, the administrative law judge (ALJ) determined that Dr. Reiff did not have standing to challenge the PSO bylaws. In so ruling, the ALJ recognized that an expansion of privileges might have an impact on Dr. Reiff's right to seek a raise in salary, which Dr. Reiff testified was a possibility if he were given attending status, or might enhance his level of professional knowledge and expertise, but the ALJ rejected these as reasons to find standing. Although the bylaws limit the range of activities that Florida law permits psychologists to perform, the ALJ also concluded that this did not deprive Dr. Reiff of a property right that would constitute an injury in fact. Finally, the ALJ concluded that the limitations on psychologists' privileges *1032 are premised upon the hospital's reasonable needs; thus, they did not violate section 395.0191(1) by discriminating against psychologists as a class. Accordingly, he concluded that Dr. Reiff was not injured in fact by the hospital's right to "exercise discretion in creating job requirements by class of health care providers."
Even assuming that Dr. Reiff had established standing, the ALJ next decided that although the governing body of the hospital is an "agency" and the PSO bylaws meet the definition of "rule," as provided in section 120.52(16), Florida Statutes (1995),[2] the bylaws constitute internal management memoranda under subsection (16)(a) thereof, and thus are exempt from rulemaking. First, he determined that they do not affect any plan or procedure important to the public, because the issue of right to treatment is addressed by statute, whereas the bylaws in question simply detail who delivers care to the patients at NEFSH. Next, he stated that the bylaws do not affect Dr. Reiff's private interests, because they apply to classes of employees, that is, psychologists, rather than any one psychologist in particular.
We are unable to agree with any of the ALJ's holdings. In regard to the ALJ's conclusion that Dr. Reiff lacked standing, we note that a showing of an adverse effect on an economic benefit has never been considered the litmus test by which standing is determined. For example, in Coalition of Mental Health Professions v. Department of Professional Regulation, 546 So.2d 27 (Fla. 1st DCA 1989), the Coalition was denied standing to intervene in a proceeding challenging the validity of rules regulating the Coalition's members. This court stated: "The fact that [the Coalition's] members will be regulated by the proposed rules is alone sufficient to establish that their substantial interests will be affected and there is no need for further factual elaboration of how each member will be personally affected." Id. at 28. In a comparable manner, the PSO bylaws establish the clinical privileges which Dr. Reiff may exercise; thus, he is substantially affected by their implementation.
The ALJ next decided that the bylaws did not meet the definition of rule, as provided in section 120.52(16)(a).[3] It is important to observe that the ALJ initially examined the criteria outlined under the first paragraph of section 120.52(16), and determined that the bylaws comply with the general definition of rule in that they create rights and require compliance, and have the consistent effect of law. Consequently, he concluded that the bylaws in question were self-executing, and, as such, they could not be administered through the discretion of the Medical Executive Director. The ALJ then decided that the memoranda exception of subsection (16)(a) applied. From our reading of the plain language the legislature used in creating the exception, proof of its application is established in either of two ways: by showing that the memorandum does not affect the private interests of a person, or that it does not affect the interests of the public. In our judgment, NEFSH presented insufficient evidence as to either prong.[4]
Turning first to the ALJ's determination that the internal management memorandum exception applied because Dr. Reiff's "private interests" were not affected by the bylaws' operation as to him, the ALJ essentially reached the same conclusion as he had *1033 in deciding that Dr. Reiff lacked standing to challenge the agency's policy statements as rules. The ALJ noted that the limitations created by the bylaws were designed to affect the class of psychologists as a whole, not the private interests of any individual psychologist, such as Dr. Reiff. We decline to accept such analysis for the same reason that we rejected the ALJ's conclusion in regard to the standing issue. As we previously observed, the bylaws purport to regulate Dr. Reiff's exercise of his profession by limiting the clinical privileges which he otherwise had a legal right to perform, thereby diminishing the scope of professional duties which he was qualified to carry out by law.
Additionally, we see very little difference between the facts in the present case and those in Florida State University v. Dann, 400 So.2d 1304 (Fla. 1st DCA 1981). There, this court held that the university's document setting forth procedures for awarding its employees merit raises and other increases was invalid because it had not been promulgated as a rule, and that the internal management memorandum exception did not apply. In affirming the decision that the exception was inapplicable, we approved the following language from the order striking down the agency's policy statement: "`Although the procedure is for use internally within the University, it affects the private interest of each faculty member in the salary he or she receives for services performed for the University.'" Id. at 1305. Similarly, in the present case, the private interests of each psychologist NEFSH employs are affected by the restrictions placed on him or her to practice psychology within the confines of the hospital, a valuable property right possessed by all licensed psychologists. Cf. Florida Med. Ass'n v. Department of Prof'l Reg., 426 So.2d 1112, 1116 (Fla. 1st DCA 1983).
In next determining that the public interest was not affected by the operation of the bylaws, the ALJ emphasized the fact that the bylaws have no application outside the agency which issued them. We have found no cases that have adopted such reasoning in assessing whether an agency's policy statement comes within the internal management memoranda exception. The few cases applying the exception have done so on different grounds. For example, this court held that guidelines of the Department of Highway Safety and Motor Vehicles, which prescribed standards of physical fitness for highway patrol officers, were exempt from the strictures of rulemaking because they were not selfexecuting, in that they were subject to the discretion of the supervising officer. See Department of Highway Safety & Motor Vehicles v. Florida Police Benevolent Ass'n, 400 So.2d 1302 (Fla. 1st DCA 1981). Obviously, the court's discussion of the exception was immaterial to its decision in that the agency's policy statements never met the statutory definition of rule.
Thus, we have found no case to date that supports the ALJ's restrictive interpretation of the internal management memoranda exception, i.e., that no public interest is implicated because the bylaws have no effect outside the agency which issued them.[5] Even if such were a relevant consideration, the legislature has already announced a public interest in the establishment of clinical privileges by licensed facilities, because the statute prohibits such facilities from discriminating against certain classes of health care providers, such as psychologists, in the practice of their profession. Section 395.0191(1), Florida Statutes (1995), provides:
No licensed facility, in considering and acting upon an application for staff membership or clinical privileges, shall deny the application of a qualified doctor of medicine licensed under chapter 458, a doctor of osteopathy licensed under chapter 459, a doctor of dentistry licensed under chapter 466, a doctor of podiatry licensed under chapter 461, or a psychologist licensed under chapter 490 for such staff membership or clinical privileges within the scope of his or her respective licensure solely because the applicant is licensed under any of such chapters.

(Emphasis added.)
Section 395.0191(1), adding the provision banning discriminatory practices against the *1034 class of psychologists, was included within part I of Chapter 92-289, section 11, of the Laws of Florida. The legislative purpose behind the creation of the act was expressed in the following terms:
It is the intent of the Legislature to provide for the protection of public health and safety in the establishment, construction, maintenance, and operation of hospitals and ambulatory surgical centers by providing for licensure of same and for the development, establishment, and enforcement of minimum standards with respect thereto.
§ 395.001, Fla. Stat. (1995).
Thus, in order to implement the declared legislative intent of protecting the public health and safety in the maintenance and operation of hospitals, the Florida Legislature, among other enactments, expressly forbade licensed hospitals from denying clinical privileges to certain classes of health care providers solely because of their professional status. Consequently, in deciding whether a public interest was affected by the issuance of the internal management memoranda at bar, we need look no further than the language of section 395.019(1), on which Dr. Reiff relied in his administrative challenge. As we have recognized in numerous decisions, such as Florida League of Cities, Inc. v. Department of Environmental Regulation, 603 So.2d 1363, 1370 (Fla. 1st DCA 1992); Bowling v. Department of Insurance, 394 So.2d 165, 171 (Fla. 1st DCA 1981); and Balino v. Department of Health & Rehabilitative Services, 362 So.2d 21, 24 (Fla. 1st DCA 1978), evidence "appropriate in form" may differ from one proceeding to another depending on the "nature of the issues involved." Therefore, in the case at bar, the legislature has itself supplied the evidence relating to a public interest, appropriate in form to the nature of the issues involved.
REVERSED.
DAVIS, J., concurs.
BENTON, J., dissents with opinion.
BENTON, Judge, dissenting.
Harry Reiff is a state employee who appeals dismissal of the rule challenge he brought against his employer under sections 120.535 and 120.56, Florida Statutes (1995). He seeks to expand the scope of the duties he and all other psychologists who work at Northeast Florida State Hospital are allowed to perform. The job restrictions he questions are embodied in hospital bylaws governing staff privileges. But the challenged bylaws apply only to hospital employees, because every psychologist on staff is an employee of Northeast Florida State Hospital. In these circumstances, the final order determined that the bylaws under challenge amount to "internal management memoranda," which need not be promulgated as administrative rules. Agreeing with this analysis, I respectfully dissent from reversal of the order dismissing appellant's rule challenge.
In the final order under review, the administrative law judge set out in detail the facts surrounding the bylaws adopted by the Professional Staff Organization (PSO) of the Northeast Florida State Hospital:
8. The PSO Bylaws are only applicable to hospital employees named in the document and are not binding on, or applicable to, employees of any other state hospital, state institution or facility within the Department of Health and Rehabilitative Services or elsewhere.
9. The reason for adopting the PSO Bylaws was an attempt to lend structure to the operation of the hospital. In particular, the PSO Bylaws were adopted at the direction of the management in the Department of Health and Rehabilitative Services to expand the membership of the hospital treatment staff, to include psychologists and other health care professionals as a means to comply with requirements of law.
....
26. Part I, Article IV, Section 3.C. states that:
Appointment to the Professional Staff Organization shall confer on the appointee only such clinical privileges as have been recommended by the Credentials Committee and then granted by the Governing Body in accordance with these Bylaws. The credentialling committee *1035 is a multi-disciplinary group within the hospital. Before the Credentials Committee acts upon the request for clinical privileges a subcommittee of practitioners within the individual appointee's discipline examines the request. The governing body has the final authority to grant clinical privileges based upon the recommendations of the Credentials Committee. See Part I, Article IV, Section 3.C., PSO Bylaws.
27. Consistent with the clinical privileges available to the various classes of health care professionals, to include psychologists, the Medical Executive Director has the final authority to assign or remove any member of the professional staff to or from the care of an individual patient in the hospital. See Part I, Article III, Section 1.A., PSO Bylaws.
28. In practice the Medical Executive Director at the hospital primarily uses psychiatrists as the attending health care provider based upon the need to manage medication received by patients and the existence of medical co-morbidity in the patient population as that pertains to diagnosis of the patient's condition.
29. At some time during their stay, approximately 90% of the patients will require medication. Psychologists may not prescribe medication.
....
31. Petitioner has challenged the limitation of hospital psychologists' clinical privileges previously listed, the inability to admit patients, to serve as attending health care provider, to write health care provider treatment orders and the inability to recommend discharge of patients contained in the PSO Bylaws, as unpromul[g]ated rules which should have been promulgated and which are contrary to statutes governing his practice and the operation of the hospital. Those challenges are further described in the conclusions of law.
32. Additional facts which assist in understanding the hospital operation and its use of professional staff include the distinction between the court admission to the facility for most patients and the clinical admission which is performed by physicians on staff once the patient arrives at the hospital. The clinical admission is the process of beginning the evaluation, diagnosis and treatment of the patient, whereas the decision to involuntarily place the patient is made by the court in accordance with Chapter 394, Florida Statutes. The PSO Bylaws refer to the clinical admission. Following treatment the physician's recommendation for discharge of a patient admitted under the Baker Act is made when the attending physician is convinced that the patient is entitled to release in accordance with the Baker Act.
33. The attending psychiatrist and nonpsychiatrist physician who is responsible for a patient at the hospital serves in an oversight role with final decision making responsibilities as to patient care. Patients have a core treatment team consisting of a psychiatrist, nurse, social worker and qualified mental health care professional. That core team does not include a psychologist. The extended treatment team would include a psychologist, nutritionist and rehabilitation staff. The exception to this arrangement is with forensic patients who are seen and treated by psychologists in a separate process.
34. The separate process concerns the class of patients in the hospital who have been committed in accordance with Chapter 916, Florida Statutes, as incompetent to proceed in legal proceedings involving criminal matters or for reason of being found not guilty due to insanity. These patients are subject to the authority of a court of competent jurisdiction which decides when the patient should be discharged or remain hospitalized. To assist the court in deciding the outcome, reports prepared by the Petitioner and other psychologists who are involved with the forensic treatment are provided to the court. Petitioner and other psychologists may be called upon to testify and render an expert opinion concerning the question of the need for continued hospitalization in forensic cases. In that setting the court has previously deferred to Petitioner's opinions *1036 in deciding to release a patient or have the patient remain hospitalized.
....
37. The policies concerning clinical privileges, rights to admit, attend, prepare treatment orders and recommend discharge of patients in a non-forensic setting within the hospital have no immediate effect on Petitioner's salary as a career service employee. Petitioner could possibly request an increase in salary of up to 10% if he were given additional responsibilities commensurate with increased clinical privileges. The exercise of additional duties in the non-forensic setting might also assist Petitioner in his professional development given greater professional responsibilities. On the other hand Petitioner is performing essentially the same functions in caring for forensic patients and that is seen as promoting his professional development.
As the final order makes clear, petitioner's central concern is the scope of his job duties, which the "PSO Bylaws" in part describe by "defining clinical privileges available to [staff psychologists and other] ... classes of health care professionals."
We are bound by the findings that, although in the form of hospital bylaws, the provisions under challenge are directed to agency employees only, and describe how they are to perform the services for which they were hired. If management directives specifying how agency employees are to discharge their job responsibilities do not qualify as internal management memoranda, it is hard to imagine what does. This is not to say that our cases draw clear lines in this area. I would affirm without reaching appellant's contention that the bylaws violate section 395.0191, Florida Statutes (1995), and without prejudice to appellant's right to pursue this claim by some other avenue.
NOTES
[1] Forensic patients may be discharged only by court order, and the court takes into consideration the report and, occasionally, the testimony of hospital psychologists.
[2] Or section 120.52(15), Fla. Stat. (Supp.1996).
[3] Section 120.52(16)(a) states:

"Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule. The term does not include:
(a) Internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public and which have no application outside the agency issuing the memorandum.
[4] It appears from our reading of the statute that once a challenger, such as Dr. Reiff, presents sufficient proof showing that the agency's statement complied with the general definition of a rule, as found by the ALJ, the burden of producing evidence establishing that the exception applies is then placed on the agency. See § 90.302(1), Fla. Stat. (1995).
[5] Indeed, such a narrow construction appears contrary to the recent legislative declaration that rulemaking is the preferred means of issuing agency statements, and that such procedure "is not a matter of agency discretion." § 120.54(1), Fla. Stat. (Supp.1996).