745 So.2d 378 (1999)
DEPARTMENT OF REVENUE, Appellant,
v.
Victor NOVOA, Anna Socarras Enrique Altuzarra, and Lander Carn, Appellees.
No. 98-2697.
District Court of Appeal of Florida, First District.
October 12, 1999.
Rehearing Denied November 19, 1999.
*379 Kevin J. ODonnell, Assistant General Counsel, Office of the General Counsel, Tallahassee, for appellant.
Jerry G. Traynham of Patterson & Traynham, Tallahassee, for appellees.
Cindy Home, Assistant General Counsel, Department of Management Services, Tallahassee, for Amicus Curiae Department of Management Services.
Robert A. Butterworth, Attorney General, and Edwin A. Bayo, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Amicus Curiae The Attorney General.
PADOVANO, J.
This is an appeal from a final order by an administrative law judge invalidating an agency policy on the ground that it is an unpromulgated rule. The policy at issue applies only to employees of the Department of Revenue and it does not impair any private right established by law. Therefore, we conclude that it falls within the "internal management memorandum" exception to the definition of a rule. Because the policy is not a rule, the administrative law judge erred in determining that it should have been adopted by the rule-making process.
Employees of the Department of Revenue are not allowed to prepare tax returns or fill out other state or federal tax forms for private parties during their nonworking hours. According to the Code of Conduct for Department Employees, "[p]reparation of tax returns and other forms required by the Department of Revenue or the Internal Revenue Service, whether compensated or uncompensated, for other than family members is not permitted." DOR Code of Conduct, § 6.C.(2). This policy is also stated in a publication entitled "Disciplinary Procedures and Standards," a copy of which is furnished to all employees of the Department of Revenue. DOR Disciplinary Procedures and Standards, § II E.6. The prohibition against preparing private tax returns is well known throughout the Department but it was not adopted as a rule.
The appellees are tax auditors employed by the Department of Revenue. They filed a petition on April 14, 1998, challenging the Department's policy regarding after-hours employment on the ground that it was an unpromulgated rule. The appellees alleged that they "desire to perform professional service in their off-duty time" and that the preparation of tax returns for private parties would not "present any conflict of interest" with their work for the Department. In response to the petition, the Department maintained that its policy was exempt from the rulemaking requirements *380 because it did not meet the definition of a rule.
Following a formal hearing on the petition, the administrative law judge determined that the policy fell within the definition of a rule, and that it was invalid because it had not been adopted in the rulemaking process. In the final order rendered on July 9, 1998, the judge found that the Department's Code of Conduct contains a literal prohibition against the preparation of private tax returns, and that the Employee Handbook distributed to all Department of Revenue Employees makes it clear that any employee who prepares a private tax return during offduty hours is subject to disciplinary measures. Based on the testimony presented at the hearing, the judge also found that the Department had never made an exception to the policy against the preparation of a tax return for compensation. Finally, the judge rejected the Department's argument that the policy at issue was an "internal management memorandum" and therefore exempt from the definition of a rule. The Department filed a timely notice of appeal to seek judicial review of the administrative order.
We begin by examining the nature of the governmental power vested in the Department of Revenue. The Department was created as a part of the executive branch of the state government by an act of the Florida Legislature. See § 20.21 Fla.Stat. (1997). As the legislature recognized, the separation of powers provision in Article II, section 3 of the Florida Constitution enables the Department of Revenue and other state agencies to exercise executive branch authority under the direction of the governor without interference by any other branch of the state government. See § 20.02 Fla. Stat.; Arthur J. England, Jr., and L. Harold Levinson, Florida Administrative Practice Manual, § 5.03 (1999).
The legislature has exclusive authority to determine the extent to which the Department may adopt administrative rules, but that limitation on agency power is necessary because rulemaking is a legislative function, not an executive function. When an agency promulgates a rule having the force of law, it acts in place of the legislature. Therefore, an agency has no power to adopt a rule apart from that power which has been properly delegated to it by the legislature. See Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978); St. Johns River Water Management District v. Consolidated-Tomoka Land Co., 717 So.2d 72 (Fla. 1st DCA 1998). The question in this case is not whether the Department encroached on legislative power by adopting a rule without authority, but whether it has employed a policy that should have been adopted as a rule.
Section 120.54(1)(a), Florida Statutes provides that an "agency statement defined as a rule ... shall be adopted by the rulemaking procedure provided by this section as soon as feasible and practicable." A party who is substantially affected by an agency statement not adopted as a rule, may file a petition under section 120.56(4), Florida Statutes for an administrative determination that the statement is invalid as a violation of the rulemaking requirement of section 120.54(1)(a). An agency statement is invalid under these statutory provisions, however, only if it falls within the definition of a rule.
The Administrative Procedure Act identifies the agency statements that qualify as rules and those that do not. Section 120.52(15), Florida Statutes defines a rule as follows:
"Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements for an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule.
*381 Section 120.52(15) then lists three general classes of agency statements that do not fall within the definition of a rule. The first of these is a statement defined as an internal management memorandum. Subsection (15)(a) provides that the term "rule" does not include "internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public and which have no application outside the agency issuing the memorandum."
Whether the Department's policy meets the definition of a rule in section 120.52(15) depends, in a broad sense, on the kind of governmental power the Department purports to exercise. The legislative power to regulate rulemaking necessarily includes the authority to prevent an agency from employing a policy that meets the definition of a rule. It does not follow, however, that the definition of a rule should be applied so expansively that it brings all agency functions within the direct supervision of the legislature. When a dispute arises over the mandatory rulemaking provisions of section 120.54(1)(a), the court must protect the legislative power to regulate rulemaking, but the court must also ensure that the definition of a rule is not applied so broadly that it includes executive branch functions within its scope.
Based on these general principles, and our interpretation of section 120.52(15), we conclude that the Department's policy regarding after-hours employment falls within the exception for internal management memoranda. Consequently, the policy is not a rule, and the Department had no obligation to adopt it in the rulemaking process. The Department's policy does not "affect ... a plan or procedure important to the public." Members of the general public have no arguable interest in the restrictions an administrative agency imposes on its own employees. Likewise, the policy does not apply "outside the agency." Because the policy applies only to employees of the Department, no person or firm outside the Department could possibly be affected by it.
Whether the Department's policy affects the "private interest of any person" presents a more difficult question, but we conclude that it does not. The policy does have an impact on the appellees to the extent that it prevents them from earning additional income by preparing tax returns for private parties. However, the appellees have not shown that they have a protected right to prepare tax returns for additional compensation in their off-duty hours. The most that can be said of this activity is that it might not be prohibited by law.
Section 112.311(5), Florida Statutes prohibits state employees from engaging in any off-duty employment that "is in substantial conflict with the proper discharge of his or her duties in the public interest." The administrative law judge found that the appellees did not intend to engage in any activity that would conflict with their obligation to the Department of Revenue. This is not the equivalent of a finding that there was no conflict, but even so it would support only a conclusion that the activity was not prohibited by section 112.311(5). The absence of a conflict between the appellees' duty to the public as state employees and their desire to earn additional income after work does not equate to a right to engage in a particular kind of after-hours work. The appellees have not shown that any such right exists.
The administrative law judge rejected the internal management memorandum argument on the basis of our decision in Department of Highway Safety and Motor Vehicles v. Schluter, 705 So.2d 81 (Fla. 1st DCA 1997), but that decision is distinguishable. In Schluter, the agency had adopted several employment policies that were directly contrary to the Police Officer's Bill of Rights enacted in sections 112.531 through 112.535, Florida Statutes. We concluded that the agency policies did not qualify as internal management memoranda because they impaired a right protected *382 by state law. The "private interest" affected by the agency policies was the kind of interest that is protected by section 120.52(15)(a).
Likewise, our decision in Reiff v. Northeast Florida State Hospital, 710 So.2d 1030 (Fla. 1st DCA 1998), turned on the fact that the agency policy violated a legal right existing under the law. In Reiff, we held that the bylaws of a public hospital did not qualify as internal management memoranda, because they were in direct violation of a state statute that prohibited discrimination in allowing hospital staff privileges. Again, the "private interest" affected by agency policy was the right protected by state law.
In contrast, the employment policy in this case does not violate any right. While it is true that all of the appellees have a property right in their continued employment, see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Grice v. City of Kissimmee, 697 So.2d 186 (Fla. 5th DCA 1997), there is nothing about the policy in this case that impairs that right. At most, the policy impairs the appellees' opportunity to earn additional income by preparing tax returns for private parties during their off-duty hours.
Another factor supporting our conclusion in this case is that the Department's policy is not self-executing. Although the policy sets a standard of conduct that might ultimately result in disciplinary action, it does not provide a remedy or establish a procedure that could be used to impose a penalty. A career service employee charged with a violation of the policy is still entitled to all of the protections of the career service system. In this respect, we find the policy to be quite different from the one we addressed in Florida State University v. Dann, 400 So.2d 1304 (Fla. 1st DCA 1981). There, we held that a University policy setting forth the procedure for awarding merit pay increases for faculty members was not an internal management memorandum. The difference is that the mechanism for the agency action in Dann was the policy itself. Because the policy was self-executing, it had the same force as a rule.
In contrast, the Department's Code of Employee Conduct merely informs its employees that the preparation of tax returns for private parties is "not permitted." The Code does not mention the possible penalty, nor does it contain a procedure for imposing discipline. Hence, we conclude that the Code establishes a disciplinary standard which is not the equivalent of a rule. See Lawrence v. Department of Health and Rehabilitative Services, 18 FALR 1435 (DOAH 1996), aff'd., 690 So.2d 594 (Fla. 1st DCA 1997) (holding that standards of conduct set out in an employee handbook were internal management memoranda and therefore not rules); Whisler v. Department of Corrections, 20 FALR 1844 (DOAH 1996), aff'd., 696 So.2d 345 (Fla. 1st DCA 1997) (holding that disciplinary standards defining sexual harassment in the workplace are internal management memoranda and not rules).
We are also persuaded by a point made in the amicus briefs by the Attorney General and the Department of Management Services. Section 110.227(1), Florida Statutes states that "[e]ach agency head shall ensure that all employees of the agency are completely familiar with the agency's established procedures on disciplinary actions and grievances"; yet there is no accompanying statutory provision that would authorize the agencies to promulgate their disciplinary standards as rules. Instead, the Department of Revenue and other state agencies have submitted their respective disciplinary standards for review and approval by the Department of Management Services.
A determination that disciplinary standards such as this must be adopted in the rulemaking process would effectively invalidate the disciplinary standards of many other state agencies in the same position as the Department of Revenue. We do *383 not think this result was intended. If the legislature wanted the agencies to codify their disciplinary standards in the Florida Administrative Code, then surely it would have given them the authority to do so. The fact that no such authority exists is yet another good reason to conclude that disciplinary standards are included within the exception for internal management memoranda.
For these reasons, we emphasize that our holdings in Schluter and Reiff are limited to situations in which the agency policy violates a protected right. According to section 120.52(15)(a), an agency statement affecting a "private interest" is not an internal management memorandum. The interest referred to in the statute is not a business opportunity, as in the present case, but an interest protected by a legal right. In our view, this interpretation of section 120.52(15)(a) is necessary to preserve the executive authority vested in the agencies. We reverse the decision of the administrative law judge on the merits. Based on this decision, we must also reverse the order assessing attorney's fees against the Department.
Reversed.
DAVIS, J., CONCURS. BENTON, J., DISSENTS WITH OPINION.
BENTON, J., dissenting.
Controlling precedent, including two very recent decisions, stand for the proposition that the internal memorandum exception is unavailable where agency directives affect any of a broad range of rights of agency employees. Last year it was even decided that agency policies specifying what work certain employees could perform on a state job should be promulgated as rules. See Reiff v. North-east Fla. State Hosp., 710 So.2d 1030, 1033 (Fla. 1st DCA 1998) ("[T]he private interests of each psychologist NEFSH employs are affected by the restrictions placed on him or her to practice psychology within the confines of the hospital,...."). The year before, policies governing investigations of agency employees were held to fall outside the internal management memorandum exception. See Department of Highway Safety and Motor Vehicles v. Schluter, 705 So.2d 81, 83 (Fla. 1st DCA 1997) ("The internal management memorandum exception ... cannot apply if the private interests of any person are affected by the policy. In this case, the private interests of each officer placed under investigation are affected,...."). On both panels but unable to join either opinion, I nevertheless feel bound at this juncture by such recent precedent. One way out of the present confusion would be certification to the Florida Supreme Court of a question of great public importance.
The majority opinion purports to distinguish Reiff and Schluter on the ground that "the Department's policy is not selfexecuting" and on the ground that the "policy in this case does not violate any right." Ante at 382. But the administrative law judge found
1. Petitioners are employees of the Department of Revenue (DOR) who wish to prepare federal income tax returns. They assert they wish to prepare the returns on a pro bono basis and for hire in their non-working time for persons who are not required to file any tax returns with the State of Florida, and who are not required to pay court-ordered payments of child support.
2. Each of the Petitioners is employed with the Respondent as a Tax Auditor II, III, or IV, and each is a Career Service employee with permanent status.
3. Petitioners' primary work function for the Respondent entails auditing State tax returns filed with DOR by business entities.
. . . .
8. Petitioners became aware, following their employment by Respondent, of Respondent's policy prohibiting its employees from preparation of federal income *384 tax returns for compensation during their non-working time.
9. Respondent's policy has been consistently disseminated to employees through group meetings with employees and in memoranda circulated by management to employees. Pro bono preparation of federal tax returns is permitted in some situations.
10. Respondent's policy is expressed also in Respondent's "Code of Conduct" which is published to all employees. The policy provides:
(2) Outside Preparation of Tax Returns and Other Forms
Preparation of tax returns and other forms required by the Department of Revenue or the Internal Revenue Service, whether compensated or uncompensated, for persons other than family members is not permitted.
11. Respondent also states the policy in its auditor's manual in the following language:
The Department has a policy specifically prohibiting all employees from preparing any state or federal tax returns, reports, declarations or documents, or otherwise [sic] engage in accounting, use, analysis or preparation of any financial records for consideration, or [sic] sign such tax document for compensation, gift, or favor.
12. Respondent's policy has found expression in Respondent's official writings, monthly newsletter to employees, and memoranda addressed to employees and management. Statements of the policy have been systematically communicated to agency personnel with the intent and effect of prohibiting employee preparation of federal tax returns for compensation in the course of secondary employment and implemented with the direct and consistent effect of law.
13. Respondent's Code of Conduct literally prohibits any exception to the policy prohibiting participation by an employee in preparation of federal tax returns for pay during off-duty hours for anyone other than family members. Respondent's Employee Handbook also makes it clear that any employee engaging in such conduct, absent specific approval, faces disciplinary action "up to and including dismissal." As established by testimony of Glenn Bedonie, an employee of Respondent in various, highly responsible, management positions, and William P. Fritchman, a participant in development of the policy and Respondent's former chief of personnel for 23 years, there has been no instance in which any employee has ever been permitted to prepare federal income tax returns "for hire" during off-duty time.
14. As stipulated by the parties, Respondent has not adopted, in compliance with Section 120.54, Florida Statutes, the policy of refusing to allow employees to prepare federal tax returns for hire in secondary employment.
15. Petitioners do not contemplate and do not desire to prepare federal tax returns in circumstances that would present a conflict of interest with their employment with Respondent. They do not seek to prepare tax returns for individuals who own a business, who are required to file state returns, and who are subject to audit by Respondent.
16. Confidential tax information possessed by Respondent is not available to the Petitioners or other auditors within Respondent's employment. Such information must be requested from a Computer Audit Analyst or a Senior Tax specialist on a specific taxpayer which the particular auditor has been assigned to audit. If deemed appropriate, the information may be made available to the auditor. Similarly, confidential tax information obtained by Respondent from the Internal Revenue Service (IRS) is adequately safeguarded from ready abuse by employees by requiring an auditor to justify the need for such *385 information to a series of supervisory personnel.
17. Respondent presented no creditable or persuasive evidence that it would be impractical or unfeasible to enact its present policy in compliance with requirements of Chapter 120, Florida Statutes.
These findings foreclose any argument that the agency's policy against employees' preparing federal tax forms for others after hours was merely a guideline not intended by its "own effect ... to require compliance." McDonald v. Dep't of Banking and Finance, 346 So.2d 569, 581 (Fla. 1st DCA 1977).
Penalties for noncompliance are a separate question. Like the unpromulgated rule here, a duly promulgated rule governing dredging and filling or reclamation of lands disturbed by phosphate mining is no less a rule because it is not enforced in precisely the same way every time there is noncompliance. Very few administrative rules are truly "self-executing" in this sense. The majority opinion's reliance on the orders entered in Lawrence v. Department of Health and Rehabilitative Services, 18 F.A.L.R. 1435 (DOAH 1996), and Whisler v. Department of Corrections, 20 F.A.L.R. 1844 (DOAH 1996), is misplaced. Although each was affirmed per curiam without opinion, the result in each can be explained on the basis that the disciplinary guidelines at issue there were intended only to afford guidance and not to have the force and effect of law. See Department of Highway Safety and Motor Vehicles v. Florida Police Benevolent Ass'n, 400 So.2d 1302, 1303 (Fla. 1st DCA 1981). See also Webster v. South Fla. Water Management Dist., 367 So.2d 734, 734 (Fla. 4th DCA 1979) (holding that the internal management memorandum exception did not apply to agency policy implicated in an employee's dismissal because "dismissal from employment affects a person's private interests with a vengeance").
Whether promulgated as a rule or not, agency policy that "violate[s] any right" is necessarily ultra vires. The agency policy in question here curtails certain outside employment, including remunerative employment. We have consistently held agency policy affecting the pecuniary interests of agency employees to be outside the internal management memorandum exception. See Florida State Univ. v. Dann, 400 So.2d 1304, 1305 (Fla. 1st DCA 1981) ("Although the procedure is for use internally within the University, it affects the private interest of each faculty member in ... compensation. ..."); State, Dep't of Admin. v. Stevens, 344 So.2d 290, 296 (Fla. 1st DCA 1977) (holding procedures governing state employees'"bumping rights" must be promulgated as rules). In addition, a prohibition forbidding preparation of tax returns even on a pro bono basis affects employees' associational and expressive rights under the Florida and federal constitutions.
That the agency policy at issue here can be viewed as having no impact except on employees of the Department of Revenue is not, under our cases, inconsistent with the conclusion that the policy should have been promulgated as a rule. See Reiff, 710 So.2d at 1033 & n. 5 ("[W]e have found no case to date that supports the ALJ's restrictive interpretation of the internal management memoranda exception, i.e., that no public interest is implicated because the bylaws have no effect outside the agency which issued them. Indeed, such a narrow construction appears contrary to the recent legislative declaration that rulemaking is the preferred means of issuing agency statements, and that such procedure `is not a matter of agency discretion.' § 120.54(1), Fla. Stat. (Supp.1996)." (footnote incorporated in text)); Dann, 400 So.2d at 1305; Stevens, 344 So.2d at 296.
Stripped of its judicial gloss, the language of section 120.52(15)(a), Florida Statutes (1997), might well support an exception that would exempt from the Administrative Procedure Act's rulemaking requirements any directive from an administrative agency to its employees as long as *386 the directive did not impinge on legal relationships between the agency and third parties or otherwise affect third parties' interests. Cf. Department of Business Regulation v. Martin County Liquors, Inc., 574 So.2d 170, 174 (Fla. 1st DCA 1991), and Amos v. Department of Health and Rehabilitative Servs., 444 So.2d 43, 46-47 (Fla. 1st DCA 1983). But we are not construing the internal management memorandum exception for the first time today. On the basis of stare decisis, and in the absence of clarifying legislation, I respectfully dissent.