927 So.2d 5 (2006)
Bryon D. PARK, Appellant,
v.
CITY OF WEST MELBOURNE, Florida, Appellee.
No. 5D05-2226.
District Court of Appeal of Florida, Fifth District.
February 17, 2006.
Rehearing Denied April 25, 2006.
*6 Edward R. Gay, Orlando, for Appellant.
Charles Robinson Fawsett, P.A., of Shutts & Bowen LLP, Orlando, for Appellee.
ORFINGER, J.
Bryon D. Park appeals the summary final judgment entered in favor of the City of West Melbourne ("City") in his action for declaratory relief seeking reinstatement and back pay. We reverse.
From the police department's phone bill, Police Chief Brian Lock, learned that a call had been placed from a department phone line to the Astrological Society psychic hotline, incurring a charge of $39.95. He questioned several police officers, including Park, about the call. Park claimed that he had no knowledge of anyone calling a 1-900 number or any psychic service, and signed a written statement to that effect. After learning that the police department had been charged for a call to a psychic hotline, and that Chief Lock was looking into the matter, Officer "Bo" Bryant admitted to Chief Lock that he had called the psychic phone line. According *7 to Bryant, he had seen an advertisement for the psychic line, which claimed that any call under three minutes would be free. Bryant told Chief Lock that Park had timed the call to make sure that he was not on the phone longer than three minutes.
Based on Bryant's admission, Chief Lock began an internal investigation to determine if Park had provided false testimony, and, as a result, violated the police department's Uniform Standards of Conduct, which Park had agreed to as a condition of his employment. Chief Lock interviewed Park and advised him that the investigation could lead to disciplinary action, demotion, or dismissal. Even after being confronted with Bryant's admission, Park still maintained that he had not called the psychic hotline, nor did he remember Bryant calling the psychic hotline while he timed the call. However, Park conceded that he was having family problems around the time when the call was placed, and if Bryant said that he participated in the call, he probably did; he simply did not remember it.
Mark K. Ryan is the City's Chief Executive Officer and is the only City employee with authority to discharge City employees. Based on Chief Lock's investigation, Ryan wrote to Park, setting forth the allegations against him and advising him that Chief Lock had recommended that Park's employment with the City be terminated. Ryan advised Park that before a final decision on his employment was made, Park could meet with him and present his side of the story. A pre-termination meeting was held, attended by Ryan, Chief Lock, Park, Park's attorney, and an attorney for the City. Following the meeting, Ryan decided to discharge Park based on his dishonesty about his participation in the call to the psychic hotline. Ryan's discharge letter to Park stated:
I have decided to terminate your employment with the City of West Melbourne.
....
I advise you that you are entitled to a subsequent public, evidentiary hearing before a person selected and empowered by the City to set aside, modify or affirm this decision. The issue in this hearing would be whether the City's decision to terminate your employment was arbitrary, pretextual or for an improper motive. This hearing would meet the requirements of due process of law under the 14th Amendment of the United States Constitution and applicable statutory and case law.
If you wish to have such a hearing, please request it in writing to me within 15 days from the date of this letter. Your failure to request such a hearing in writing within such time will be considered a waiver of any right to such a hearing.
In response, Park requested a public evidentiary hearing on the matter.[1] William Hall, the town manager of the Town of Malabar, was appointed to serve as the hearing officer. In a letter to the hearing officer discussing his appointment and the scope of the hearing, Ryan wrote:
The purpose of this hearing is for you to determine whether the City's decision to terminate a police officer was or was not *8 arbitrary, capricious, pretextual, or for an improper motive. You are hereby empowered to set aside, modify or affirm the City's decision following your review of the evidence presented at this hearing.
After the hearing, the hearing officer concluded that the City had failed to meet its burden to prove by a preponderance of the evidence that its termination of Park was for just cause and ordered Park's "immediate reinstatement as a police officer for the City of West Melbourne, along with back pay."
The City, believing that the hearing officer had "departed in a very material way from the instructions he had been given by the City regarding his role" in the hearing, did not reinstate Park, but, instead, filed a petition for a writ of certiorari in the circuit court, seeking to set aside the hearing officer's decision. The trial court agreed with the City that the hearing officer's role was limited to deciding whether the City's decision to discharge Park was arbitrary, capricious, pretextual, or for an improper motive, and concluded that the hearing officer was not empowered to reweigh the evidence. Since the City's decision was not arbitrary, capricious, pretextual, or for an improper motive, the trial court granted the City's certiorari petition, quashed the hearing officer's decision, and confirmed the City's decision to discharge Park.
Park then sought review in this Court. We quashed the circuit court's decision, holding that under Grice v. City of Kissimmee, 697 So.2d 186 (Fla. 5th DCA 1997), a police officer who is not a probationary or at-will employee is entitled to a due process hearing before his termination is final, and "when the termination is based on the testimony of witnesses ... as a matter of constitutional due process, the officer must be permitted to confront and cross-examine the witness." Park v. City of West Melbourne, 769 So.2d 397, 398 (Fla. 5th DCA 2000) (Park I). This Court reasoned that since Park was not afforded a hearing where he could confront and cross-examine the witnesses against him before his termination became final, Park was denied procedural due process. Id.
Park then filed a petition for a writ of mandamus in the circuit court, seeking reinstatement with back pay, consistent with the hearing officer's ruling. The circuit court order denied Park's mandamus petition, concluding that Park "did not establish a clear legal right to reinstatement to employment with the City of West Melbourne with back pay, the relief requested...." That ruling was affirmed by this Court. Park v. Ryan, 821 So.2d 1082 (Fla. 5th DCA 2002) (Table) (Park II).
Not being easily deterred, Park then filed an action seeking, by means of a declaratory judgment, reinstatement to City employment and back pay. Both Park and the City subsequently filed motions for summary judgment. The trial court granted the City's motion, concluding that it had previously decided with finality in the mandamus proceeding that Park "did not establish a clear legal right to reinstatement with back pay," and, consequently, the issue was barred by judgment by estoppel. This appeal followed.
A final order granting summary judgment is reviewed de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). A court may grant summary judgment "if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Id. (citing Menendez v. Palms W. Condo. Ass'n, 736 So.2d 58 (Fla. 1st DCA 1999)).
In the proceedings below, the circuit court concluded that under Gordon v. Gordon, 59 So.2d 40 (Fla.1952), Park was estopped *9 from litigating his entitlement reinstatement with back pay based on the court's earlier denial of Park's petition for writ of mandamus. On appeal, Park argues that the trial court erred in concluding that his complaint seeking declaratory relief, injunctive relief, and damages against the City is barred by the doctrine of judgment by estoppel. We agree.
In Gordon, the Florida Supreme Court held that the test in determining whether judgment by estoppel applies to a case is "whether the evidence in both cases is in essence the same" and whether "`every point and question' presented in the second action was actually litigated and decided in the first." 59 So.2d at 45. For res judicata or collateral estoppel to apply, there must also exist in the prior litigation a "clear-cut former adjudication" on the merits. Dep't of Health & Rehab. Servs. v. LaPlante, 470 So.2d 832, 834 (Fla. 2d DCA 1985); see also R.D.J. Enters., Inc. v. Mega Bank, 600 So.2d 1229, 1231 (Fla. 3d DCA 1992) (holding that collateral estoppel prevents relitigation of issues that have been fully litigated and which resulted in a final decision of a court of competent jurisdiction); Hochstadt v. Orange Broadcast, 588 So.2d 51, 53 n. 2 (Fla. 3d DCA 1991) (stating that "defensive collateral estoppel `occurs when a defendant seeks to prevent a plaintiff form asserting a claim the plaintiff has previously litigated and lost against another defendant'") (internal citations omitted).
Consequently, we must determine if the trial court's denial of Park's petition for writ of mandamus decided the issues presented in Park's current complaint on the merits. See Dep't of Health & Rehab. Servs. v. B.J.M., 656 So.2d 906, 910 (Fla. 1995) (noting that Florida courts have emphasized that judgment by estoppel "precludes relitigation of issues actually litigated in a prior proceeding") (emphasis in original). Under this standard, we conclude that estoppel by judgment does not bar Park's action, because no adjudication on the merits occurred in the mandamus proceeding.
"[M]andamus may be used only to enforce a clear and certain right; it may not be used to establish such a right, but only to enforce a right already clearly and certainly established in the law." Milanick v. Town of Beverly Beach, 820 So.2d 317, 320 (Fla. 5th DCA 2001) (citing Fla. League of Cities v. Smith, 607 So.2d 397, 400-01 (Fla.1992)). In denying Park's petition for writ of mandamus, the trial court merely concluded that Park "did not establish a clear legal right to reinstatement to employment with [the City] with back pay, the relief requested...." The trial court's decision to deny Park mandamus relief was predicated in large part on its belief that our opinion in Park I mandated that the City provide Park with a due process, evidentiary hearing. We think that conclusion misconstrues our earlier decisions. In Park I, we readopted our holding in Grice that "if the City is going to terminate someone on the basis of the testimony of other witnesses then the officer must, as a matter of constitutional due process, at some pointeither a pre-termination hearing or at a post-termination hearingbe permitted to confront those witnesses and cross examine them." Grice, 697 So.2d at 190. We did not remand Park I with directions to hold a pre-termination hearing, nor could we have done so. "[A]fter review by certiorari, an appellate court can only quash the lower court order; it has no authority to direct the lower court to enter contrary orders." Gulf Oil Realty Co. v. Windhover Ass'n, Inc., 403 So.2d 476, 478 (Fla. 5th DCA 1981). When we quashed the circuit court's order in Park I, the hearing officer's ruling was left standing.
*10 The City concedes that it was proper for Park to seek enforcement of the hearing officer's ruling by mandamus or declaratory relief. Park initially chose mandamus relief but was rebuffed on procedural grounds. That was not adjudication on the merits and does not bar this action. Consequently, summary judgment was improper.
Finally, the City argues that the statute of limitations also bars Park's claim. We decline to rule on that issue as it was never considered in the trial court.
REVERSED AND REMANDED.
GURROLA, B., Associate Judge, concurs.
TORPY, J., concurs and concurs specially, with opinion.
TORPY, J., concurring and concurring specially.
I concur in the opinion of the majority. I write to address a potential misconception brought about by the panel opinion in Park I. There, we stated:
In the instant case, since there had been only an internal investigation plus a recommendation from the chief to the city manager that Park be fired, and no pretermination hearing during which Park could confront the witnesses against him, the circuit court decision denies Park the due process right to confront the witnesses against him.
Park v. City of West Melbourne, 769 So.2d 397, 398 (Fla. 5th DCA 2000) (emphasis added). Admittedly, this statement might be interpreted to require that all pretermination proceedings include the right to cross-examine witnesses. If so, this is clearly not a correct statement of the law. The seminal decision regarding pre-termination due process for tenured public employees provides as follows:
The foregoing considerations indicate that the pretermination "hearing," though necessary, need not be elaborate. We have pointed out that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." In general, "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action. Under state law, respondents were later entitled to a full administrative hearing and judicial review. The only question is what steps were required before the termination took effect.
In only one case, has the Court required a full adversarial evidentiary hearing prior to adverse governmental action. However, as the Goldberg[2] Court itself pointed out, that case presented significantly different considerations than are present in the context of public employment. Here, the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisionsessentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.
The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges *11 against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.
Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (emphasis and footnote added) (citations omitted).
Citing Loudermill, our decision in Grice v. City of Kissimmee, 697 So.2d 186 (Fla. 5th DCA 1997), makes clear that the right to confront witnesses need not be afforded during a pre-termination hearing, provided that the right is afforded during a post-termination hearing:
It seems, therefore, that if the City is going to terminate someone on the basis of the testimony of other witnesses then the officer must, as a matter of constitutional due process, at some pointeither at a pre-termination hearing or at a post-termination hearingbe permitted to confront those witnesses and cross-examine them.
Grice, 697 So.2d at 190 (emphasis supplied).
Park was afforded notice of the charges and an opportunity to explain his side to Mr. Ryan before he was terminated. Thereafter, he received a prompt post-termination hearing during which he had the opportunity to cross-examine witnesses. Therefore, the pre-termination procedure did not violate Park's right to procedural due process, and I do not believe Park I holds otherwise.
The actual holding in Park I was that the hearing official had not exceeded the scope of his authority. Although the opinion does not expressly state its holding, because the lower court had quashed the hearing official's order for this reason, our order quashing the circuit court's order clearly mandated this conclusion. The discussion in Park I about pre-termination confrontation simply expresses the view that, because the pre-termination procedure was not sufficientunless followed by a post-termination confrontation opportunity and because the decision of the hearing official was nullified by the lower court's decision, due process was denied by the "circuit court decision." Park, 769 So.2d at 398. Our mandate quashing the circuit court's order forecloses the city from further challenges to the authority of the hearing official. Whether other defenses are now available to the city is beyond the scope of this proceeding.
NOTES
[1] The evidentiary hearing, provided by the City, was in compliance with the procedure laid out in the City's Uniform Standards of Conduct, which provides:

If a member's employment is terminated or suspended without pay, he/she will be afforded a post discipline hearing. The purpose of this hearing will be for the member to present information, which would be heard by a Hearing Officer or Review Board at the discretion of the City, to decide if the disciplinary action should stand.
[2] Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).